59 CCPA

**The UNITED STATES, Appellant,**

v.

**BALDT ANCHOR, CHAIN & FORGE DIVISION OF the BOSTON METALS CO., Albert F. Maurer Company, Appellees.**

**Customs Appeal No. 5417.**

United States Court of Customs and Patent Appeals.

May 25, 1972.

ALMOND, Judge.

The United States appeals from the decision and judgment of the Second Division of the United States Customs Court[1] sustaining the protests herein and overruling the tariff classification of machinery used for making heavy steel anchor chains for vessels. Two protests and two separate shipments are involved. The first shipment, entered in April 1958, consisted of a heavy-duty transport system the function of which was to convey partially manufactured chains from one processing or manufacturing station to the next ensuing station. The second shipment, entered in May 1958, consisted of five machines to be used in the step-by-step production of the chains. This latter shipment comprised (1) an electrical resistance heater, (2) a hydraulic bending machine, (3) an automatic flash welding machine, (4) a clamping device, and (5) a hydraulically operated steel press.

The heavy-duty transport system, first shipment, was classified as other articles having as an essential feature an electrical device or element, not specially provided for, under paragraph 353 of the Tariff Act of 1930, as modified, T.D. 52739, and assessed duty at the rate of 13¾ percent ad valorem. Appellees, (plaintiffs below) protested (62/8017) claiming that the merchandise is properly dutiable at 11 percent under paragraph 353.

The merchandise comprising the second shipment was classified as follows:

| | Article | Tariff Provision | Duty |
|---|---|---|---|
| 1. | Electrical resistance heater | Par. 353, as modified, T.D. 52739 (electric heater) | 12½% |
| 2. | Hydraulic bending machine | Par. 372, as modified, T.D. 51802 (machine tools) | 15% |
| 3. | Automatic flash welding machine | Par. 353, as modified, T.D. 54108 (electric welding apparatus) | 11% |
| 4. | Clamping device | Par. 372, as modified, T.D. 54108 (machine nspf) | 12% |
| 5. | Hydraulically operated stud press | Par. 372, as modified, T.D. 51802 (machine tools) | 15% |

L. Patrick Gray, III, Asst. Atty. Gen., Andrew P. Vance, Chief, Customs Section, Michael M. Hunter, New York City, for the United States.

Allerton deC. Tompkins, New York City, attorney of record, for appellees.

Before RICH, ALMOND, BALDWIN, and LANE, Judges.

1. Baldt Anchor, Chain & Forge Division of the Boston Metals Co. v. United States, 64 Cust. Ct. 268, C.D. 3989 (1970).

In protesting those classifications (protest 62/10442), appellee claimed that the articles should be classified as an entirety with duty at 11% under paragraph 353 (welding apparatus, instruments and devices).

The pertinent provisions of the Tariff Act of 1930 are:

*Classified under:*

*Paragraph 353, as modified, T.D. 52739:*

Articles having as an essential feature an electrical element or device, such as electric motors, fans, locomotives, portable tools, furnances, heaters, ovens, ranges, washing machines, refrigerators and signs, finished or unfinished, wholly or in chief value of metal, and not specially provided for:

\* \* \* \* \* \*

Electric \* \* \* heaters, and ovens ............ 12½% ad val.

\* \* \* \* \* \*

Other \* \* \* ........ 13¾% ad val.

*Paragraph 353, as modified, T.D. 54108:*

Electrical signaling, welding, and ignition apparatus, instruments (other than laboratory), and devices, finished or unfinished, wholly or in chief value of metal, and not specially provided for ..................... 11% ad val.

*Paragraph 372, as modified, T.D. 51802:*

Machine tools (except jig-boring machine tools) ............. 15% ad val.

*Paragraph 372, as modified T.D. 54108:*

Machines, finished or unfinished, not specially provided for:

\* \* \* \* \* \*

Other \* \* \* ........ 12% ad val.

*Claimed under:*

*Paragraph 353, as modified, T.D. 54108:*

Electrical signaling, welding, and ignition apparatus, instruments (other than laboratory), and devices, finished or unfinished, wholly or in chief value of metal, and not specially provided for ................ 11% ad val.

\* \* \* \* \* \*

Parts, finished or unfinished, wholly or in chief value of metal, not specially provided for, of articles provided for in any item 353 in this Part:

\* \* \* \* \* \*

Other ................. The same rate of duty as the articles of which they are parts.

We have carefully reviewed the facts adduced of record. In material substance, they are not in dispute and were fairly and succinctly stated by the Customs Court:

All the items under protest were designed to be used and operated together to produce a welded anchor chain by a continuous process; the chain could not be produced in this manner if any of the steps performed by these items were eliminated. The imported items were integrated or coordinated so as to operate together as a unit, and each item was designed for a particular application in the production of a welded anchor chain. The individual items did not have any use except in conjunction with the other imported items to produce welded anchor chains.

The actual manufacturing process is a continous one by virtue of the transport equipment covered by the first shipment. This equipment consists of a specially constructed revolving turntable with four overhead crane stations, which conveys the material mechanically from one machine station to the other. The five imported machines covered by the second shipment perform the following functions: (1) the electrical resistance heater heats a steel bar to approximately 1,500 degrees Fahrenheit; (2) the link bender bends an end of the bar 180 degrees, then laces or inserts this link into an already manufactured link and forms the bar into a "C" with its two ends abutting; (3) the electric flash welder electrically welds the abutting ends of the "C"-shaped link together into a hot-welded closed link; (4) the clamping device holds the welded link while the extruded metal on the closed link is clipped off by a pneumatic hand-operated chisel which produces a smooth surface around the welded area; and (5) the hydraulically operated stud press contains shaped dies into which the link sides are squeezed until they set the ends of a

steel crossbar or stud into position across the center of the link where the weld has been made. This stud is further reinforced by locking protuberances on each end which penetrate into the hot link sides during the squeezing operation. This operation not only adds the studs which prevent the kinking of the chain during its use but also gives the final shape to the anchor chain link.

The five machines imported in the second shipment are dedicated to the production of anchor chains and there is no other known use for these machines except in conjunction with each other in an integrated operation. The transporting equipment imported in the first shipment is also an integral part of the manufacturing process and without it the other machines could not produce the anchor chain.

In view of this factual situation, the court below addressed itself to the first issue as to whether all of these machines are to be considered welding apparatus under the provisions of paragraph 353. It noted that while the machines perform diverse functions, they are all interrelated in a successive step-by-step process of manufacture to accomplish the end purpose of producing anchor chains. We agree with the Customs Court that this issue was considered and resolved by this court in United States v. Mannesmann-Meer, Inc., 54 CCPA 24, C.A.D. 897 (1966), where the facts are strikingly similar to those of the instant case. The machinery in *Mannesmann-Meer* consisted of progressive coordinated interrelated elements such as (1) a forming mill, (2) a welding table, (3) a cooling mill, (4) a sizing mill, (5) a cutoff device, and (6) a storage bin. This combination was held to constitute an entirety properly classifiable under the provisions for electrical welding apparatus in paragraph 353. In the cited case, this court observed that:

The record clearly discloses that the apparatus under consideration was designed and used as a composite unit with the single purpose of taking raw material and producing therefrom a finished product, viz. a welded tube [here, a welded chain]. To this end, the composite elements or parts functioned in combination. Without each successive part taking the basic material from its predecessor in the continuous process of manufacture, the apparatus would not execute its end purpose of producing a finished welded product. It was on this basis that the Customs Court, correctly we think, treated the apparatus as an entirety for tariff purposes in its application and construction of paragraph 353 as modified by T.D. 54108.

 We are of the view that the holding in *Mannesmann-Meer* leads to the conclusion that the imported equipment would constitute an entirety had all the machines been imported together. However, in this case they were not imported together. It is well settled that articles which are not imported together are precluded from being classified as an entirety. *See, e. g.,* Benrus Watch Co. v. United States, 21 CCPA 139, T.D. 46467, cert. denied, 291 U.S. 679, 54 S.Ct. 529, 78 L.Ed. 1067 (1933); James G. Wiley, A/C Pasadena Firearms Co. v. United States, 56 Cust.Ct. 331, C.D. 2645 (1966). Appellees and the Customs Court have not taken issue with that long-established principle. Therefore, since the transport equipment (first shipment) was imported in a shipment separate from the five machines imported in the second shipment, it cannot be considered together with the second shipment to form an entirety.

We think that this is the critical feature in this case, and contrary to the reasoning of the court below, we think the holding in *Mannesmann-Meer* supports appellant's position and not appellees'. As stated previously, each of the imported machines is essential to the operation of the chain manufacturing equipment; thus, in accordance with *Mannesmann-Meer*, the six machines would together constitute an entirety. Since a vital part, the transport equipment, was not included in the shipment

of the remaining five parts, neither shipment can be considered an entirety. The entirety would have been the six machines imported together. Anything less is not an entirety.

The Customs Court held, however, that the five machines of the second shipment are an entirety of "unfinished" electrical welding apparatus and that the transport equipment of the first shipment is a "part" of such unfinished electrical welding apparatus. We cannot agree. The five machines are not unfinished electrical welding apparatus; they are an incomplete part of the entirety which would have existed had the two shipments been one. To hold that the bulk of the equipment, imported in one shipment, is an entirety of unfinished apparatus and that the remaining element of that equipment, imported in a separate shipment, is a part of that entirety, would greatly compromise the doctrine of entireties. If that were the law, once it was determined that assembled pieces of equipment constitute an entirety, the mere absence of some of those pieces, even though essential ones, from the shipment would not preclude its treatment as an entirety since almost always it would be an entirety of "unfinished" apparatus and the missing pieces of equipment would be "parts" of that entirety. Clearly that is not the law. United States v. Schoverling, 146 U.S. 76, 13 S.Ct. 24, 36 L.Ed. 893 (1892); Benrus Watch Co. v. United States, supra; United States v. Irwin, 78 F. 799 (2d Cir. 1897).

There being no entirety present in this case, we think the customs officials were correct in classifying each of the six machines separately. Accordingly, the judgment of the Customs Court is reversed.

Reversed.