STELLA D'ORO BISCUIT CO., INC.

v.

UNITED STATES.

C.D. 4709;  Court No. 75–1–00145.

United States Customs Court.

July 22, 1977.

---

Goldrich & Gross, New York City (Robert A. Calinoff, New York City, of counsel), for the plaintiff.

Barbara Allen Babcock, Asst. Atty. Gen., Washington, D. C. (Steven P. Florsheim, trial atty., New York City), for the defendant.

NEWMAN, Judge:

Plaintiff imported an oven and various other pieces of bakery equipment from Italy, which were entered at the port of New York in August 1973. With the exception of the oven, the equipment covered by the entry was assessed with duty upon liquidation at the rate of 5.5 per centum ad valorem pursuant to the provision in item 666.25, TSUS, as modified by T.D. 68–9, for "Other" industrial machinery for preparing and manufacturing food or drink and parts thereof. The oven, however, was separately appraised at a value of $80,000.00, net packed, and was assessed with duty at the rate of 9.5 per centum ad valorem under the provision in item 661.30, TSUS, as modified by T.D. 68–9, for non-electric industrial ovens and parts thereof.

Plaintiff does not dispute the appraisement of the oven, but claims that the oven should have been classified under item 666.25, as was the other merchandise covered by the entry, concerning which there is no controversy.

I have concluded that the oven in question was properly classified by the customs officials under item 661.30, TSUS, as modified.

## THE RECORD

The evidence of record consists of the oral testimony of two witnesses (Thomas Forte, plaintiff's purchasing director; and George Monaco, plaintiff's plant director) and three exhibits, introduced by plaintiff. Additionally the invoices attached to the official court papers were submitted by plaintiff and received in evidence without specific marking.

Plaintiff is engaged in the manufacture of various bakery goods such as cookies, Italian style breadsticks and crackers. The oven was imported with a number of other components of a so-called "breadstick production line". Subsequent to importation, the oven was used by plaintiff in the manufacture of bakery products, although it appears from Mr. Forte's testimony that simi-

lar ovens were used by others in the manufacture of asphalt tiles (R.28).

Forte stated that a breadstick production line "is a continuous line, as it were, from manufacture or mixing of the dough to the finished product going through a wrapping machine" (R.8). Continuing, Mr. Forte described the operation of a breadstick production line as follows (R.17–18):

\* \* \* We start with a mixing operation, which is the mixing of the dough. From this step, we go to a forming piece of equipment which forms, takes a bunch or wad of dough and shapes it into pencil-like sticks. After this form or shape, as it were, it will go through what we call a proofing box or proofing piece of equipment for proofing purposes. It will come out of the proofer and travel along a conveyor into the oven, where it is baked. From the oven, it is taken via another conveyor, and it is then dried, as it were and, from this conveyor, it is taken to a wrapping machine.

Plaintiff's other witness, Mr. Monaco, gave a similar description of the operation of a breadstick production line, starting with mixing equipment and terminating with packaging equipment (R.32, 34–35, 44–45).

The record further shows that:

Bakery lines at plaintiff's plant have certain "common elements", such as mixing equipment, a system of conveyors, an oven and a packaging or wrapping machine (R.7–8). All bakery lines follow the same general procedure, although producing different products. Some of plaintiff's equipment was purchased as "lines", while other equipment was purchased as individual pieces. Prior to the present importation, plaintiff manufactured breadsticks on a "line" created by assembling individual pieces of equipment, that plaintiff either built or purchased in the United States. Plaintiff's former breadstick line followed a sequence of mixing, proofing, cutting to size, baking in an oven, drying or cooling, and packaging (R.8–9, 22–23). The present importation did not cover a complete breadstick

line, since no packaging or wrapping machinery was included in the shipment (R.42–43). Admittedly, in order to produce breadsticks, plaintiff required a complete line, which includes "packing facilities" (R.44–45).

## OPINION

Plaintiff maintains in its brief: "The TSUS Item 666.25 classification for 'Industrial machinery for preparing and manufacturing food or drink and parts thereof' is a classification controlled by actual use under General Interpretative Rule 10(e)". Further, plaintiff contends that "The classification of the oven portion of the integrated breadstick line should be controlled by its chief use, that of food processing machinery, i. e., that machinery which changes the character of the food or advances it towards the condition in which it is used". Finally, plaintiff argues: "Assuming *arguendo* that the oven is not food processing machinery, the Bureau acted in an arbitrary and capricious manner by segregating only the oven portion for reclassification".

Defendant insists that classification of the oven under item 661.30 is "mandated by the language of the specific tariff provisions, an applicable headnote, and the codified rule of relative specificity".

There is no dispute in this case that the subject merchandise, an oven, is a non-electric industrial oven. Plainly, then, this oven is described in item 661.30, TSUS. Additionally, as defendant pointed out, heading 84.14 of the Brussels Nomenclature (which is identical to item 661.30, TSUS, in order, language and phraseology) encompasses "Bakery ovens, including biscuit ovens". See *Explanatory Notes to the Brussels Nomenclature* (1955), Vol. III, Heading 84.14 (p. 791). In view of the identical phraseology in both Brussels heading 84.14 and TSUS item 661.30, the *Explanatory Notes* are a significant source of legislative history and of interpretation respecting item 661.30. *Mattel, Inc. v. United States*, 65 Cust.Ct. 616, 625–26, C.D. 4147 (1970).

The tariff classification claimed applicable by plaintiff, item 666.25, is controlled by use (other than actual use), and consequently is to be determined in accordance with the chief use in the United States of the class or kind of merchandise to which the imported article belongs at, or immediately prior to the date of importation. General Interpretative Rule 10(e). While the record merely establishes plaintiff's actual use of the oven subsequent to importation, and not the chief use in accordance with Rule 10(e),[1] defendant has nevertheless conceded in its brief that the oven is described in item 666.25, TSUS, as well as in item 661.30, TSUS. Thus, an issue of relative specificity of the two competing provisions is posed by virtue of General Interpretative Rule 10(c), which reads, so far as pertinent:

> (c) an imported article which is described in two or more provisions of the schedules is classifiable in the provision which most specifically describes it; * *

In *F. L. Smidth & Company v. United States*, 409 F.2d 1369, 1376, 56 CCPA 77, 85, C.A.D. 958 (1969), the Court of Customs and Patent Appeals construed the above-quoted statutory rule of relative specificity as follows:

> This [interpretative rule] appears to us to mean this: if an article is determined to be clearly described in two or more items, selection of the controlling item by relative specificity is mandatory and takes precedence over other judge-evolved methods of resolving ambiguity, including resort to extrinsic aids such as legislative history.

As between item 661.30 and item 666.25, the provision which more specifically describes the oven herein is "the item having requirements which are 'more difficult to satisfy'." *Smidth, supra,* 409 F.2d at

---

1. Mr. Forte admitted under cross-examination that while plaintiff's use of the oven was limited to bakery products, "some of the ovens we buy, either of domestic origin or imported, such as this one which is part of our line, they will use these similar ovens to make tiles, asphalt tiles * * *" (R.28). Mr. Monaco was unable to state whether or not the oven in question was used for purposes other than manufacturing bakery products (R.41).

1376, 56 CCPA at 85. The provision in item 661.30 for non-electric industrial ovens is plainly more restrictive and "difficult to satisfy" than item 666.25, which describes virtually every conceivable piece of machinery used industrially for preparing and manufacturing food or drink, including of course bakery ovens. Consequently, the imported oven is more specifically described by item 661.30.

A further reason why the oven is properly classifiable under item 661.30 rather than item 666.25 may be gleaned from headnote 1, part 4A, schedule 6, which reads:

> 1. A machine or appliance which is described in this subpart and also is described elsewhere in this part is classifiable in this subpart.

Item 661.30, TSUS, under which the oven was classified, appears in subpart A of part 4, schedule 6, while item 666.25, TSUS, claimed applicable by plaintiff, is found in subpart C of part 4, schedule 6. Hence, as between the two competing provisions, Congress has clearly manifested its intent in headnote 1, *supra*, that industrial ovens (i. e., bakery ovens) be classified in subpart A.

■ In its brief, plaintiff did not address itself to the significant questions raised concerning either General Interpretative Rule 10(c) or headnote 1, part 4A, schedule 6. Rather, plaintiff merely insists that it met its burden of proof under General Interpretative Rule 10(e) by showing that the oven was actually used as food processing machinery for 3½ years after it was imported. Clearly, this evidence of actual use, albeit unrefuted, does not fulfill plaintiff's burden of proof. Inasmuch as plaintiff failed to show that the imported oven is not described in item 661.30, the provisions of Rule 10(c) and headnote 1, *supra*, effectively negate the applicability of item 666.25, notwithstanding defendant's concession that the oven is also described in that provision.

Finally, when counsel for plaintiff was questioned by the Court at the trial as to whether plaintiff was claiming that a *com-* *plete* breadstick production line (including the oven) was dutiable as an entirety, counsel responded in the affirmative (R.49). Nevertheless, plaintiff did not urge the entireties doctrine in its post-trial brief.

Fundamentally, if a *complete* breadstick production line were classifiable as an entirety, the oven component alone could not be subject to separate classification. See *Trans-World Shipping Service, Inc., et al. v. United States,* 58 Cust.Ct. 120, 124, C.D. 2900 (1967). But in the present case we need not consider whether or not a complete breadstick line constitutes an entirety, since the testimony of plaintiff's witnesses obviously establishes that the shipment did not comprise a complete breadstick production line.

■ Both of plaintiff's witnesses repeatedly testified that a complete breadstick production line includes a packaging or wrapping machine (R.8, 9, 18, 23, 32, 35, 45). And although Mr. Forte mentioned a wrapping machine as one of the pieces of equipment included in the entry (R.18), Mr. Monaco, upon carefully examining the commercial invoice listing the imported equipment, reluctantly admitted on cross-examination that no wrapping or packaging equipment was included in the entry (R.42–43). Therefore, since the entry did not include all the components of a complete breadstick production line, as described by plaintiff's witnesses, the invoiced equipment (which included the oven) could not properly be classified as an entirety under item 666.25. *Cf. United States v. Baldt Anchor,* 459 F.2d 1403, 59 CCPA 122, C.A.D. 1051 (1972) (where entirety would have comprised six machines imported together in one shipment, five machines in shipment *held* not to constitute an entirety).

Under all the facts and circumstances, I conclude that the oven was properly classified by the customs officials as a separate item of merchandise under item 661.30, TSUS, as modified,[2] and therefore plaintiff's action is dismissed. Judgment will be entered accordingly.

---

2. As noted *supra*, plaintiff does not challenge the separate appraisement of the oven.