NICHIMEN CO., INC., Plaintiff,

v.

UNITED STATES, Defendant.

No. 77–11–04590.

United States Court of International Trade.

April 6, 1983.

O'Neill, DiManno & Kelly, New York City (Urban S. Mulvehill, at the trial; Urban S. Mulvehill, New York City, on the brief), for plaintiff.

J. Paul McGrath, Asst. Atty. Gen., Washington, D.C., Joseph I. Liebman, Atty. in Charge, Commercial Litigation Branch, New York City (Saul Davis, New York City, at the trial and on the brief), for defendant.

BERNARD NEWMAN, Judge:

This action presents a problem frequently raised affecting the classification of merchandise for customs duty purposes referred to as "entireties".

## I.

In July and August, 1976, plaintiff imported in the same shipments, but in separate packages, certain radio chassis and tape players from Hong Kong.[1] Customs at the Port of New York initially classified the imports under item A 678.50 of the Tariff Schedules of the United States (TSUS), which classification entitled the merchandise to duty-free entry pursuant to the Generalized System of Preferences. However, the entries were subsequently reliquidated and the chassis and tape players were separately classified as follows: the chassis in each entry were classified under item 685.-24, TSUS,[2] and assessed with duty at the rate of 10.4 per centum ad valorem; the tape players in each entry were classified under item 678.50, TSUS,[3] and assessed with duty at the rate of 5 per centum ad valorem.

The gravamen of plaintiff's complaint is that the importations consist of chassis/tape player combinations which are claimed to be properly classifiable as a single tariff entity (viz., an entirety) under item A 678.50, TSUS.[4]

I have concluded that the subject merchandise is not classifiable as entireties, and therefore the Government's separate classification of the chassis and tape players was correct.

---

1. While the entries indicate that Nichimen Co., Inc. was the importer, it appears that the importations were made on behalf of Morse Electro Products Corporation (R. 52).

2. Item 685.24, TSUS encompasses solid-state (tubeless) radio receivers, other than those designed for motor-vehicle installation.

3. Item 678.50, TSUS covers machines not specially provided for, and parts thereof.

4. Defendant has conceded that if the merchandise is classifiable as an entirety under item 678.50, TSUS, the merchandise is eligible for duty-free treatment under the Generalized System of Preferences (viz., under item A 678.50, TSUS).

## II.

Although the record in this case is relatively voluminous,[5] the pertinent facts nevertheless may be briefly summarized:

The imported chassis and tape players were designed by Morse Electro Products Corporation ("Morse") and were manufactured in Morse's overseas facility. After importation, the chassis and tape players were individually retained by Morse in its warehouse inventory, and were withdrawn from time to time as parts were required by Morse in the manufacture of an extensive line of console and compact audio equipment. In that production, the imported chassis and tape players were not always used in combination, inasmuch as Morse admittedly had "a group of chassis and tapes [tape players and tape recorders] that are designed to go together" (R. 129). Thus, Morse had many models of chassis and tape units that were combined and assembled with a phonograph, cabinet and other components in the production of "consoles" and "compact" units. However, the Morse tape players could not be used independently or used in combination with competitor's chassis without modifications. Consequently, a Morse tape unit (either a player or recorder) necessarily had to be used with a Morse chassis in the production of consoles or compacts.

The record further establishes that the subject chassis and tape players were never sold by Morse in combination as complete articles of commerce. In a few instances, however, where the chassis and tape players were surplus inventory or defective, they were sold in combination at the wholesale level to either a manufacturer or wholesaler who (after repair of a defective item) installed the chassis and tape players in console or compact audio equipment.

The tape player is equipped with a nine pin male plug while the chassis contains a permanently mounted nine pin female socket, and it is by means of the special plug and socket that the chassis and tape players are connected. Through the nine pin connector the tape player derives its power from the chassis, and a heavy duty transformer in the chassis supplies the power needed by the tape player. Additionally, the tape player depends on the chassis for amplification. Finally, the tape player is switched on and off at the chassis. Essentially, the tape player is a "slave unit" in the sense that such tape player "is not a complete operative system without the receiver." (R. 149).

## III.

The main problem here, as in all cases involving the issue of entireties, is that "there are no ironclad rules or universally applicable principles for determining whether merchandise should be classified and dutied as entireties",[6] and there are a number of criteria to be considered which may lead to "contrary conclusions depending what criteria are given controlling effect".[7] In the leading case of *Miniature Fashions, Inc. v. United States,* 54 CCPA 11, C.A.D. 894 (1966), our Appellate Court cited the following oft-quoted explanation of the law of entireties enunciated in *Altman & Co. v. United States,* 13 Ct. of Cust. Appls. 315, 318, T.D. 41232 (1925):

> * * * if an importer brings into the country, at the same time, certain parts, which are designed to form, when joined or attached together, a *complete article of commerce,* and when it is further shown that the importer intends to so use them, these parts will be considered for tariff purposes as entireties, even though they may be unattached or inclosed in separate packages, and even though said parts might have a commercial value and be salable separately. [Emphasis added.]

---

**5.** The transcript runs 526 pages and covers the testimony of five witnesses for the plaintiff and three witnesses for the defendant. More, the record includes 19 exhibits, including a representative sample of the merchandise, schematic diagrams and the entry papers.

**6.** *Lafayette Radio Electronics Corp. v. United States,* 57 CCPA 62, 66, C.A.D. 977, 421 F.2d 751 (1970).

**7.** *Miniature Fashions, Inc. v. United States,* 54 CCPA 11, 17, C.A.D. 894 (1966).

Plaintiff, in support of its contention that the chassis and tape players should be classified as a single entity (viz., a combination chassis/tape player) relies upon the record evidence pointing to the integrated design characteristics of the merchandise, both physical and electronic (especially respecting power and amplification), the functional interplay between the components, and their lack of separate commercial use with non-Morse products absent impracticable modifications.

Defendant, on the other hand, urges that the entireties doctrine has no application to the particular chassis and tape players in this case because the combination alone does not constitute a "complete article of commerce".

I agree with defendant's position.

■ The subject radio chassis and tape players, although unassembled when imported, were shown by plaintiff to be designed and intended to be connected by a nine pin plug and socket; and the evidence establishes that the tape player is designed to operate through the audio section of the chassis, while the power of the tape unit is in large measure supplied by the chassis. However, functional interplay and dependence of one component on another, while frequently indicative of an entirety, are not dispositive criteria in the present case.

■ It is now well settled that separate components covered by the same entry, although designed and intended to be used together, are not properly classifiable as an entirety where the components do not comprise a complete commercial entity, but instead must be assembled with additional components to form a complete article of commerce.

Thus, in *Stella D'Oro Biscuit Co., Inc. v. United States,* 65 CCPA 52, C.A.D. 1205, 570 F.2d 945 (1978), *aff'g* 436 F.Supp. 398, 79 Cust.Ct. 28, C.D. 4709 (1977), the Appellate Court affirmed this Court's holding that an imported bakery oven was not classifiable as an entirety with other imported components of a breadstick production line where the entry did not include all of the components of a complete breadstick production line. Accordingly, the oven was held to be properly assessed by Customs as a separate article under the *eo nomine* provision for industrial ovens in item 661.30, TSUS. *Also compare: United States v. Baldt Anchor, Chain & Forge Division of the Boston Metals Co.,* 59 CCPA 122, C.A.D. 1051, 459 F.2d 1403 (1972) (shipment of five integrated and coordinated machines for producing a welded anchor chain held not classifiable as an entirety, but as separate machines, where complete chain manufacturing equipment was comprised of six machines, which were not imported together); and *Franklin Industries, Inc. v. United States,* 1 CIT ——, Slip Op. 81–55 (1981) (parts of horizontal boring mill not classifiable as entirety absent a certain part of the complete mill, separately shipped).

The record is clear that the imported tape players were assembled with certain models of Morse chassis, and the tape players and chassis were used with *other components* in the production of various models of Morse consoles and compacts, which also contained a phonograph. The imported chassis were assembled with certain models of Morse tape players or tape recorders, and such combinations with *other components* were used in the production of various models of Morse consoles and compacts, which also contained a phonograph. The record further shows: a "compact" is a table model that generally would contain an AM/FM radio receiver and phonograph and could also incorporate a tape player or tape recorder; a "console" comprises a "floorstanding" cabinet (in the nature of a piece of furniture) housing a receiver, speakers, generally a phonograph, and could also contain a tape player or tape recorder.

While the bare chassis and tape players after connection could be described as a "combination", as asserted by plaintiff, nonetheless the testimony abundantly proves that Morse never sold such combination as a complete commercial article. On that score, plaintiff's Senior Vice-President for design engineering, Arthur M. Robson,

testified on cross-examination (Tr. 134–135):

Q Has Morse ever sold functioning tape players, functioning chassis, simply connected by the nine-pin plug and socket, without anything else, to its customers, to the public? A Without an escutcheon?

Q Without an escutcheon; without a cabinet; without a— A Not that I know of.

Q Without a phonograph? A Not that I know of.

Q I ask you to examine Plaintiff's Exhibit 10 at page 13. Now, Plaintiff's Exhibit 10 depicts the 30 chassis in a compact together with a tape playback and a phonograph.

Isn't that the commercial article which Morse sells to its customers and to the public? A Yes.

Q Is that true with regard to all of the chassis, tape players and tape recorders that Morse imports? A Yes.

$$* \quad * \quad * \quad * \quad * \quad *$$

Q Have you ever advertised an article, such as Plaintiff's Exhibit 3, the chassis, the bare chassis and the bare tape player? A No, not that I know of.

Q Is that also true with regard to a chassis and a tape recorder? A What is?

Q The fact that you never sell them or advertise them in bare form. A That's right.

And on recross-examination, Robson further testified (Tr. 150):

RECROSS–EXAMINATION
BY MR. DAVIS:

Q Counsel on redirect has referred to various articles as the 2TH/25 and 2TH/30 and 2TH/35.

Isn't it true that there is no such commercial article as a 2TH/30 or 25 or 35; that the commercial articles are those depicted in Plaintiff's Exhibit 10, the catalog? A Yes.

Respecting the same point, plaintiff's witness Leonard Feldman, a consulting electronic engineer and technical writer in the field of audio and video, responded on cross-examination (Tr. 273):

Q Have you ever seen an article such as Exhibit 3, which consists of the tape player chassis and the receiver chassis, sold to consumers as a single unitary article? A No.

In sum, the imported chassis and tape players were not sold by Morse in combination as complete commercial articles, but rather were inventoried and solely used as parts with other components in the production of various models of Morse consoles and compacts. Following the rationale of *Stella D'Oro* and *Baldt Anchor,* I find that Customs properly treated the chassis and tape players as separate tariff entities rather than as entireties.

*Montgomery Ward & Co. v. United States,* 73 Cust.Ct. 187, C.D. 4573 (1974), cited by plaintiff as dispositive, is not helpful in the present case. There, the importation in dispute was a cabinet containing a radio, tape player and two separate speakers. The cabinet had a cut-out to accommodate a record turntable, which was added after importation. The Court held that the importation was incorrectly classified under item 685.30, TSUS as a radio-phonograph combination, and was not classifiable as "other" combinations under item 685.50. The importation was held properly dutiable as a machine not specially provided for under item 678.50, *but significantly, no issue of entireties was raised or considered by the Court.*

## IV.

Finally, we consider plaintiff's argument that the Government's classifications in the present case were inconsistent with prior administrative practice in the classification of chassis/tape player combinations.

At the trial, plaintiff called Anton R. Johansen, a National Advisory Import Specialist to the United States Customs Service, to testify concerning the administrative practice in the classification of radio/tape player combination articles. Johansen testified, in substance, that complete radio/tape player combination arti-

cles, such as those used in automobiles or contained within a housing, were classified by Customs under item 678.50, TSUS. But the import specialist's testimony fails to establish that at the time of the subject importations there was a long-continued, consistent and uniform administrative practice by Customs in classifying merchandise such as that presently before the Court (bare chassis and tape players used as components in consoles and compacts) as entireties under item 678.50. Hence, plaintiff's claim cannot be sustained on the basis of prior administrative practice.

### V.

The action is dismissed, and judgment will be entered accordingly.