**SEARS, ROEBUCK & CO., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**Court No. 86-10-01297.**

United States Court of International Trade.

Sept. 28, 1989.

Barnes, Richardson & Colburn (Andrew P. Vance, New York City, at trial and on the briefs, appearance by Lonathan D. Hurse, and Josephine Belli, Brooklyn, N.Y., and Melvin E. Lazar, Maplewood, N.J., of counsel), for plaintiff.

Stuart E. Schiffer, Acting Asst. Atty. Gen., Washington, D.C., Joseph I. Liebman, Atty. in Charge, New York City, International Trade Field Office, Commercial Litigation Branch (Saul Davis) (Sliphen Berke, Gen. Atty., U.S. Customs Service, of counsel), for defendant.

## MEMORANDUM AND ORDER

RE, Chief Judge:

The question presented in this case pertains to the proper classification, for customs duty purposes, of certain merchandise imported from Japan, and described on the customs invoice as "tuner," "amplifier," "turntable," and "dual cassette deck."

The merchandise was classified by the Customs Service as individual components under the Tariff Schedules of the United States (TSUS), as follows:

the "tuner" under item 685.24, dutiable at 7.7% *ad val.;*

the "amplifier" under item 684.70, dutiable at 5.9% *ad val.;*

the "turntable" under item 685.36, dutiable at 4.5% *ad val.;* and

the "dual cassette deck" under item 678.-50, dutiable at 4.2% *ad val.*

Plaintiff protests these classifications and contends that the imported merchandise constitutes an "entirety" that is properly classifiable as "[m]achines not specially provided for, and parts thereof" under item 678.50, TSUS. If properly classifiable as an "entirety" under item 678.50, TSUS, as maintained by plaintiff, the merchandise would be assessed at the rate of 4.2 per centum *ad valorem.*

The government contends that the merchandise was properly classified by the Customs Service as individual components. In the alternative, the government contends that, if the court were to find that the imported merchandise constitutes an "entirety," it should be classified as "[r]adio-phonograph-tape recorder combinations other than console/consolette," under item 685.50, TSUS. If properly classifiable as an "entirety" under item 685.50, TSUS, pursuant to the government's alternative classification, the merchandise would be assessed duty at the rate of 5.9 per centum *ad valorem.*

The pertinent statutory provisions of the tariff schedules are as follows:

Classified Under:
        Schedule 6, Part 4, Subpart H:
              Machines not specially provided for, and parts thereof:
                Audio tape players:
                  ....
                Other:
                    ....
                  Other:

678.50 [dual cassette deck] Without speakers, other than headphones, earphones or headsets ....................4.2% ad val.

        Schedule 6, Part 5:
              Microphones; loudspeakers; head phones; audio-frequency electric amplifiers; electric sound amplifier sets comprised of the foregoing components; and parts of the foregoing articles (including microphone stands):
              ....

684.70 [amplifier]       Audio-frequency electric amplifiers ...........5.9% ad val.
              Radiotelegraphic and radiotelephonic transmission and reception apparatus; radiobroadcasting and television transmission and reception apparatus, and television cameras; record players, phonographs, tape recorders, dictation recording and transcribing machines, record changers, and tone arms; all of the foregoing, and any combination thereof, whether or not incorporating clocks or other timing apparatus, and parts thereof:
              ....
              Radiotelegraphic and radiotelephonic transmission and reception apparatus; radiobroadcasting and television and reception apparatus, and parts thereof:
                  ....
              Other:
                  Solid-state (tubeless) radio receivers:
                    ....

685.24 [tuner]          Other: ................................7.7% ad val.
            ....
               Record players, phonographs, record changers, turntables, and tone arms, and parts of the foregoing:
              ....

685.36 [turntable]     Other: ....................................4.5% ad val.

Claimed Under:
        Schedule 6, Part 4, Subpart H:
678.50         Machines not specially provided for, and parts thereof......4.2% ad val.

Government's Alternative Classification:

> Schedule 6, Part 5:
>> Radiotelegraphic and radiotelephonic transmission and reception apparatus, etc.:
>>> Other:
>>>> ....
>>> Other:
>>>> ....

685.50      Radio-phonograph-tape recorder combinations other than console/consolette:...........5.9% <u>ad val.</u>

---

The question presented is whether the imported merchandise has been properly classified by Customs, and, therefore, is dutiable as separate components as indicated, or whether it should be classified as an "entirety," as "[m]achines not specially provided for, and parts thereof," under item 678.50, TSUS, with duty at 4.2 per centum *ad valorem*, as contended by plaintiff.

In order to decide this question the court must consider "whether the government's classification is correct, both independently and in comparison with the importer's alternative." *Jarvis Clark Co. v. United States*, 733 F.2d 873, 878, *reh'g denied*, 739 F.2d 628 (Fed.Cir.1984). Pursuant to 28 U.S.C. § 2639(a)(1) (1982), the government's classification is presumed to be correct and the burden of proof is upon the party challenging the classification.

██ After an examination of the merchandise, the pertinent tariff items, the relevant case law and the testimony of record, it is the determination of the court that the imported merchandise does not constitute an "entirety," within the meaning of that term in customs classification cases. Hence, since plaintiff has not overcome the presumption of correctness that attaches to the government's classification, the classification of the imported merchandise as individual components is sustained. *See A & A Int'l, Inc. v. United States*, 11 CIT 775, 777, 676 F.Supp. 263, 264 (1987).

The imported articles, classified as a "tuner," "amplifier," "turntable," and "dual cassette deck," consist of four of the six components of the Sears stereo rack system, model number 9291. The stereo rack system also includes a wooden rack, which was imported from Japan together with the contested articles, and a pair of loudspeakers. The loudspeakers, which are not imported, are manufactured in the United States, and are purchased from a wholly owned subsidiary of the Japanese company that supplies plaintiff with the other elements of the Sears model 9291 stereo rack system. The wooden rack, which was imported with the four contested articles, was classified by Customs as "[f]urniture other than chairs," under item 727.35, TSUS, and was assessed with duty at a rate of 3.5 per centum *ad valorem*. Plaintiff does not contest the classification of the wooden rack.

The case was tried by able counsel, with great care and skill. The testimony of all of the witnesses was helpful and instructive, and explained the nature of the merchandise and the various components.

Mr. Frank Hendrix was the first of plaintiff's four witnesses. Mr. Hendrix, who has recently retired, was an assistant buyer of stereo music systems for plaintiff for forty-one years. He testified that the six units of the stereo rack system were advertised together, as a system, and were sold "[a]lways as a system."

According to Mr. Hendrix, all six units of the stereo rack system, consisting of the four contested articles, the loudspeakers, and the wooden rack, are packaged in three boxes, with each box labelled as one of three. He explained that a purchaser of the model 9291 stereo rack system "would receive three cartons[,] [o]ne carton with the electronics, one carton with the rack and one carton with a pair of loudspeakers."

Mr. Hendrix also testified that the four contested articles or components, "as far as the electronics are concerned, ... are married to each other." He stated that although the wooden rack and loudspeakers could be used with other stereo systems, the contested articles "will not oper-

ate unless they are operated as a unit." In his testimony, Mr. Hendrix asserted that the four contested articles are connected by a flat wire that "carries both the power and the audio signals." He stated that the four articles cannot be separated and used as parts of other stereo systems because the flat wires are connected by "unique fittings."

Plaintiff's second witness was Mr. Francis McCann, an employee of plaintiff in its marketing department for twenty-eight years, who reviewed contracts for the four contested articles. He explained that he "ordered the complete system from the manufacturer." Mr. McCann also noted that "model 9291 was designed as a complete system," and was advertised and sold as a complete system.

Plaintiff's third witness, Mr. Harry Ruther, is a senior products engineer for plaintiff. In 1984, Mr. Ruther had, as part of his duties as a "group leader" for plaintiff, evaluated the model 9291 stereo rack system before it was purchased for importation. He testified that the four contested articles "are not individual components, and not interchangable [sic] with other stereo component[s]...." He stated that individual audio components "usually consist[ ] of products that are stand-alone and need no internal power supply other than the one contained inside their own cabinet." Mr. Ruther testified that, in contrast, the four contested articles are supplied power by "a connector on the back of the amplifier to which a flat wire cable connector is connected which feeds the DC voltage to all of the other sections of the [system]." He also testified that the flat wire connectors used to conduct the voltage and signals between the contested articles are not compatible with standard audio component connectors.

Plaintiff's final witness, Mr. Larry Klein, a consultant for audio manufacturers, qualified as an expert in the field of audio systems. Mr. Klein had served for twenty years as an editor and technical director for a leading consumer magazine on audio systems, and has authored many articles on audio systems.

Speaking of the four contested articles, Mr. Klein testified that "since the cabling between the components is a dedicated and very specialized type of cabling, I would say that these components are made to be operated as a system, as an integrated unit."

The government's sole witness was Mr. Leonard Feldman. Mr. Feldman, an electronic engineer, has worked in the field of audio systems for thirty-eight years. There is no question of his expertise. He has written articles for many magazines, and is the author of several books on audio systems. In addition to having written authoritative works in the field, he served as the technical consultant for the Electronics Industry Association, an international trade association.

Mr. Feldman testified that, during his career, he "had occasion to analyze and evaluate [stereo rack] systems...." He also noted that he had analyzed and evaluated individual components, including tuners, amplifiers, turntables, and cassette recorders. Mr. Feldman was asked whether the contested articles, "in and of themselves," constitute a stereo rack system. He testified clearly that "they are not a system." When asked "[w]hat is a 'rack system,'" he replied that "essentially ... it must have ... at least an audio amplifier; at least one program source; certainly a rack, by definition; and two loudspeakers, at minimum. Now, it may have more components than that, but that would be the minimum that I would define as a 'rack system.'"

Mr. Feldman also specifically contradicted the assertions of plaintiff's witnesses that the four contested articles are "married to each other." Mr. Feldman testified that the "amplifier" article, for example, has a standard input jack that could be connected to "ninety-nine percent" of the turntables in existence. He also stated that the connectors of the "turntable" article are not unique to the Sears model 9291 system, and the article could be used with other audio components made by the same manufacturer.

Mr. Feldman testified that the other two contested imported articles, the "tape deck" and "tuner," could be electronically modified "in order to be used with other manufacturers' equipment." He stated that the modification procedure "would be about ten minutes[,] ... [o]bviously, much less [than the time of manufacture]." Mr. Feldman concluded that the contested articles, despite being elements of the Sears model 9291 stereo rack system, constitute "four separate audio components." When asked to name the imported articles he stated that they were "[a] phonograph turntable, a cassette recorder or cassette deck, an AM/FM tuner and an integrated amplifier."

This court has noted that, "under the doctrine of entireties, when an importer imports a set of components designed to form a saleable unit, the merchandise is classifiable as that unit." *Nissho–Iwai American Corp. v. United States*, 10 CIT 154, 158, 641 F.Supp. 808, 811 (1986). The components will be classified as an "entirety" if, when combined as a unit, they become " 'an inseparable part of a[n] ... entity[,]' " and " 'the change undergone is no[t] ... merely an evolutionary advance or the addition of a subsidiary auxiliary part, [but] the changed article becomes more than that which it formerly was.' " *Mitsui & Co. v. United States*, 70 Cust.Ct. 53, 58, C.D. 4407 (1973) (quoting *V. Alexander & Co. v. United States*, 59 Cust.Ct. 510, 514, C.D. 3212, 276 F.Supp. 573, 576 (1967)). However, if the individual components " 'retain their individual identities and are not subordinated to the identity of the combination, duties will be imposed upon the individual [components] in the combination as though they had been imported separately.' " *Karoware, Inc. v. United States*, 77 Cust.Ct. 112, 125, C.D. 4681, 427 F.Supp. 402, 411 (1976) (quoting *Donalds Ltd. v. United States*, 32 Cust.Ct. 310, 315, C.D. 1619 (1954)), *aff'd*, 65 CCPA 1, C.A.D. 1197, 564 F.2d 77 (1977).

It is fundamental in customs cases that the proper classification of imported articles " 'must be ascertained by an examination of the imported article itself, in the condition in which it is imported.' " *United States v. Citroen*, 223 U.S. 407, 415, 32 S.Ct. 259, 560, 56 L.Ed. 486 (1912) (quoting *Worthington v. Robbins*, 139 U.S. 337, 341, 11 S.Ct. 581, 583, 35 L.Ed. 181 (1891)). Similarly, in cases in which it is contended that imported articles constitute an "entirety," "[c]lassification is determined by the condition of the articles at the time of importation." *Miniature Fashions, Inc. v. United States*, 54 CCPA 11, 17, C.A.D. 894 (1966).

In *Stella D'Oro Biscuit Co. v. United States*, 79 Cust.Ct. 28, C.D. 4709 (1977), *aff'd*, 65 CCPA 52, C.A.D. 1205, 570 F.2d 945 (1978), the question presented was the classification of an oven and various pieces of bakery equipment needed for a breadstick production line. The merchandise was classified by Customs as separate articles. Plaintiff contested the classifications and contended that the imported merchandise should have been classified under a single provision, as an "entirety." Judge Newman, writing for the court, held that "since the entry did not include all the components of a complete breadstick production line, ... [the imported merchandise] could not properly be classified as an entirety...." *Stella D'Oro Biscuit Co.*, 79 Cust.Ct. at 34. In affirming, in a per curiam opinion, the Court of Customs and Patent Appeals held that the merchandise "did not comprise a complete breadstick production line, since it did not include packaging or wrapping machinery." *Stella D'Oro Biscuit Co.*, 65 CCPA at 52, 570 F.2d at 946.

In *Nichimen Co. v. United States*, 5 CIT 141, 565 F.Supp. 148 (1983), *aff'd*, 726 F.2d 1580 (Fed.Cir.1984), the question presented was the classification of certain radio chassis and tape players. The merchandise was classified by Customs as separate components. Plaintiff contested the classification and contended that the merchandise should have been classified as "chassis/tape player combinations," as "entireties." 5 CIT at 141, 565 F.Supp. at 149. This court held that the articles were properly classified by Customs because the articles "were not sold ... in combination as complete commercial articles, but rather were invento-

ried and solely used as parts with other components in the production of various models of ... consoles and compacts." 5 CIT at 145, 565 F.Supp. at 152. In affirming, the Court of Appeals for the Federal Circuit quoted from Judge Newman's opinion and noted that:

> "It is now well settled that separate components covered by the same entry, although designed and intended to be used together, are not properly classifiable as an entirety where the components do not comprise a complete commercial entity, but instead must be assembled with additional components to form a complete article of commerce."

*Nichimen Co.*, 726 F.2d at 1580–81 (quoting *Nichimen Co.*, 5 CIT at 143–44, 565 F.Supp. at 151).

■ Similarly, articles that may constitute an "entirety" cannot be classified as an "entirety" if they are imported in more than one importation. *See United States v. Baldt Anchor, Chain & Forge Div. of The Boston Metals Co.*, 59 CCPA 122, 125–26, C.A.D. 1051, 459 F.2d 1403, 1406–07 (1977) (two importations of different sets of machines, all used in the production of steel chains, cannot be considered an "entirety"); *Franklin Indus., Inc. v. United States*, 1 CIT 349, 350–51, 1981 WL 2457 (1981) (two importations of different components of a boring mill cannot be considered an "entirety").

The testimony at trial clearly indicates that the four contested articles do not constitute "a complete commercial entity." Indeed, every one of plaintiff's employee witnesses acknowledged that the four contested articles were not sold together as a complete unit. Mr. Hendrix, upon viewing Sears' catalogue advertisements for the model 9291 stereo system, stated that "[t]he loudspeakers have been added [to the imported articles]." Mr. McCann admitted that the model 9291 system is not "sold in its condition as imported[,] ... without loudspeakers[.]" Mr. Ruther testified that "[m]odel 9291 consists of a tuner, amplifier, a dual cassette deck, a turntable, *a rack, and two speakers.*" (emphasis added). Mr. Ruther added that "it would

be assumed that loudspeakers would be added to [the imported articles] before it is sold as a system." Mr. Klein, plaintiff's expert witness, considered the imported articles a "stereo rack system" because "stereo rack systems have been sold ...— usually, but not always— ... matched with another brand speaker." Mr. Klein, however, did not state or suggest that the four contested articles were ever sold as a "complete commercial entity."

Furthermore, as Mr. Feldman, the government's witness, testified, the four contested articles could not operate as a unit. Mr. Feldman explained that the loudspeakers "translate an electrical signal into an audible signal[,]" and are "necessary for the consumer in his normal use of a complete rack system[.]"

It is also significant to note that the contested articles " 'retain their individual identities.' " *See Karoware, Inc.*, 77 Cust.Ct. at 125, 427 F.Supp. at 411 (quoting *Donalds, Ltd.*, 32 Cust.Ct. at 315). Mr. Feldman testified clearly that the "amplifier" and "turntable" articles could be used with other audio components. He also stated that the two other contested imported articles, the "dual cassette deck" and the "tuner," could "quite easily" be modified so that they could be used with other audio components.

Descriptions of the model 9291 stereo rack system introduced by the plaintiff at trial, as found in Sears' 1984 catalogues, are also supportive of the government's argument that the four contested articles are not an "entirety." Mr. Feldman noted that, in the Sears catalogue, the six components of the system "were described as the individual components that they are." The catalogue listings for the model 9291 stereo rack system not only identifies separately each of the six components, but also sets forth particular qualities or features of each component.

From all of the testimony it is clear that the contested merchandise is not a complete stereo rack system. For the imported merchandise to qualify as an "entirety" it must constitute "a complete commercial entity," and since the articles in question

retain their essential characteristics as components, the customs doctrine of entireties does not apply.

The government's alternative classification of the four contested articles, as "[r]adio-phonograph-tape recorder combinations other than console/consolette," under item 685.50, TSUS, is conditioned upon the court holding that the imported articles constitute an "entirety." Since the court holds that they are not an "entirety," it is unnecessary to consider the government's alternative classification.

## CONCLUSION

In view of the foregoing, it is the holding of the court that plaintiff has failed to rebut the presumption of correctness that attaches to the classification of the merchandise by the Customs Service. Since the imported merchandise was properly classified as individual components, plaintiff's action is dismissed.