UNITED STATES v. IRWIN et al.

(Circuit Court of Appeals, Second Circuit. February 23, 1897.)

CUSTOMS DUTIES—CLASSIFICATION—SHOTGUNS—IMPORTATIONS IN PARTS.

Gun barrels and gun stocks, with locks, etc., constituting all the parts of complete breech-loading shotguns, and so adapted to each other in the process of manufacture as to be made into complete shotguns by inserting the barrels into the stocks, are dutiable, when shipped to the same person, on the same vessel, under the tariff act of 1890, as shotguns, and not as manufactures of metal not specially provided for, though the barrels and stocks are separately packed and invoiced. U. S. v. Schoverling, 13 Sup. Ct. 24, 146 U. S. 76, distinguished.

Appeal from the Circuit Court of the United States for the Southern District of New York.

Wallace Macfarlane, U. S. Atty., and Henry C. Platt, Asst. U. S. Atty., for appellant.

Comstock & Brown, for appellees.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

WALLACE, Circuit Judge. This is an appeal from an adjudication by the circuit court affirming the decision of the board of general appraisers, and reversing that of the collector of the port of New York in assessing duty upon certain importations of merchandise made by various entries during the years 1891 and 1892. The merchandise consisted of parts of breech-loading shotguns, and was classified and assessed for duty by the collector under that provision of the tariff act of October 1, 1890, subjecting to a specific and also to an ad valorem duty "all double-barrelled, sporting, breech-loading shotguns." The importers protested against the classification and assessment upon the ground that the articles of merchandise were not breech-loading shotguns but were only parts thereof, and were dutiable as manufactures wholly or in part of metal, not specially provided for. The board of general appraisers found that the merchandise consisted of parts of incomplete firearms, and that there was no evidence that they were ever assembled or brought together as entireties before importation; that metal was the component material of chief value in the gun stocks, as well as in the barrels,—and the board decided that the merchandise should have been assessed for duty under the metal provision. Upon the appeal by the government from that decision to the circuit court, further evidence was introduced. That evidence, together with such as was before the board of general appraisers, shows that many entries comprise gun barrels and gun stocks coincident in number, shipped for the importer on the same steamer, under separate invoices; the barrels being in cases by themselves, and invoiced as gun barrels, and the stocks being in cases by themselves, and invoiced as gun stocks. Thus, in the entry of August 1, 1891, there were 3 cases each containing 50 gun stocks, and 3 cases each containing 50 pairs of gun barrels. The stocks were equipped with the locks, the action, the trigger plates, and all the parts requisite to constitute a complete breech-loading shotgun upon inserting the barrels. The barrels and the stocks were marked with identifying numbers, so that the appropriate barrels could be selected for the appropriate stocks, respectively, and the two parts be united into a complete gun, merely by inserting the barrels into the stocks. There were other entries in which the barrels and stocks were shipped in separate cases, and invoiced separately, but were not coincident in number; in some entries there being more barrels than stocks, and in others more stocks than barrels. The evidence taken in the circuit court upon the appeal shows—what was not shown before the board of general appraisers—that in the manufacture of guns the barrels and stocks are made separately, and, at

various stages before completion, are assembled together and accurately adjusted. It is a matter of common knowledge that the barrels and stocks of breech-loading shotguns, when the guns are not in use, are detachable: and the ordinary sportsman's gun case is so constructed that the barrels must be detached when the gun is put into the case.

Upon the evidence in the record, we entertain no doubt that the importations in controversy were breech-loading shotguns, which before exportation were in a completed condition, ready for the market or for the sportsman's use, in number equal to that of the stocks or the barrels, but that the parts were detached, shipped in separate cases, and invoiced separately, to enable the importer to enter them as invoiced, escape the payment of the duty upon guns, and, after importation, reassemble the parts. We are to consider to what extent this was a legitimate or a successful effort to avoid the payment of the higher duties.

It is a well-settled doctrine that intent is not an element in determining the proper classification of imported articles, and that merchants are at liberty so to manufacture and so to import their goods as to subject them to the lowest possible duties under the tariff laws.

In Merritt v. Welsh, 104 U. S. 694, the tariff act imposed a duty upon sugars, the rate of which was graduated according to their color, and the question was whether sugars which had been artificially colored during the process of manufacture so as to impart to them a color characteristic of a lower grade of sugars were dutiable according to their actual color or according to the normal color of sugars of that grade. The court held that the sugars were dutiable according to their actual color. After observing that congress had fixed the dutiable grade of sugars by a standard of colors which originally supplied a valid test of their real grade, and that in the new processes of manufacture the standard had come to be a precarious one, the court said:

"It may be that our tariff of duties is evaded by giving to sugars, in the process of manufacture, a low grade of color. If this be so, it is no more than every manufacturer does, namely, so to manufacture his goods as to avoid the burden of high duties, provided he can do it without injuring their marketability, or injuring it less than the duties involved. So long as no deception is practiced, so long as the goods are truly invoiced and freely and honestly exposed to the officers of customs for their examination, no fraud is committed, no penalty is incurred."

In Seeberger v. Farwell, 139 U. S. 608, 11 Sup. Ct. 650, and in Magone v. Luckemeyer, 139 U. S. 612, 11 Sup. Ct. 651, the tariff act imposed a duty upon dress goods composed in part of wool, and a higher duty upon goods composed wholly of wool; and the question was whether woolen goods, into which, during the process of manufacture, a small percentage of cotton threads had been introduced for the purpose of securing their classification for duty as goods composed in part of wool, were subject to that duty, or to the duty upon woolen goods. The court held that the goods were subject only to the lower duty and adopted the view—

"That manufacturers and importers had the right to adjust themselves to the foregoing clause of the tariff, and to manufacture the goods with only a small per-

78 F.—51

centage of cotton, for the purpose of making them dutiable at the lower rate," and that, "although the goods in question contained so small an amount of cotton that the ordinary dealer in them and the ordinary examiner would not detect the cotton without a close and careful examination, that did not change the legal right of the plaintiffs to bring their goods within the operation of the clause involved by the admixture of even a small percentage of cotton, if they could do so."

As was declared in Worthington v. Robbins, 139 U. S. 341, 11 Sup. Ct. 583:

"In order to produce uniformity in the imposition of duties, the dutiable classification of articles imported must be ascertained by an examination of the imported article itself, in the condition in which it is imported."

Applying these principles to the present case, we cannot escape the conclusion that if the articles in controversy were not shotguns, in the condition in which they were imported, they were not dutiable as such, notwithstanding they had been shotguns previously, and could readily be again transformed into shotguns, and notwithstanding they had been taken apart and imported in fragments merely for the purpose of escaping the duty upon shotguns. This conclusion is enforced by the case of U. S. v. Schoverling, 146 U. S. 76, 13 Sup. Ct. 24. In that case gun stocks with mountings complete, ready for attachment to barrels, were imported. The importing firm had arranged with another firm to import the barrels. It was held that the articles were not subject to duty as shotguns. The court said:

"The intent of the importers to put the gun stocks with barrels separately imported, so as to make here completed guns for sale, cannot affect the rate of duty on the gun stocks as a separate importation."

The court added:

"The dutiable classification of the gun stocks imported must be ascertained by an examination of them in the condition in which they are imported."

In the Schoverling Case it did not affirmatively appear that the stocks and barrels had been assembled together previous to importation, and in this respect that case differs from the present case. But surely it cannot be that the physical act of attaching and then detaching the stocks and barrels before exportation can change the dutiable character of the goods. Many articles made by machinery are made in separate parts, and are never put together as an entirety until it becomes desirable to use them. Nevertheless they are completed articles, in a commercial sense, and for all practical purposes. A breech-loading shotgun is a complete article in the sportsman's hands when he has detached the barrels for a temporary purpose. It is no less one notwithstanding the parts have never been assembled, provided they have been made so as to be attachable and detachable without requiring any adjustment. The Schoverling Case does not decide that when the stocks and corresponding barrels are imported together, shipped by the same vessel for the same importer, and entered at the customhouse at the same time, duty is to be assessed upon the fragmentary parts. Under such circumstances, we think the parts are dutiable as a whole. The form of invoice which the importer may adopt, or the mode of packing which he may adopt, are immaterial

matters. If he prefers to send the barrels in one case and the stocks in another, he is at liberty to do so, but the fact that they are packed in separate cases cannot affect their dutiable character. Machines and many cumbrous articles are frequently transported with the sections or parts in different packings. If the importers had procured a policy of insurance against loss by fire or the perils of the sea, describing their goods as "shotguns on board the steamship Obdam," the policy would have covered the stocks and barrels in separate cases.

When the barrels and stocks are shipped upon different vessels, it may happen that they can never be assembled together again as a complete gun. The dangers of navigation and other contingencies may intervene to prevent it. It is not for the customs officers, in imposing duties, to speculate upon these contingencies. They must take the articles as they find them to be upon examination. If they cannot, by assembling them together, discover that they are really a different thing, it is their duty to classify them as the article they purport to be.

Undoubtedly, with this understanding of the law, importers will be able to escape the duty upon shotguns by sending the stocks and barrels in different vessels, and entering them at different times. The remedy, however, is with congress; and it may be that such a practice upon the part of importers would expose them to the penalty of a condemnation of their merchandise under that statute of congress relating to entries of merchandise by means of any "false or fraudulent practice or appliance."

These conclusions lead to a reversal of the decision of the court below.