**KMW JOHNSON, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**Court No. 81–10–01421.**

United States Court of International Trade.

Dec. 28, 1989.

Ross & Hardies, (Joseph S. Kaplan on the briefs, and Michelle F. Forte, of counsel), for plaintiff.

Stuart M. Gerson, Asst. Atty. Gen., Washington, D.C., Joseph I. Liebman, Atty. in Charge, Intern. Trade Field Office, Commercial Litigation Branch, New York City, (M. Susan Burnett, Washington, D.C., and Edward N. Maurer, U.S. Customs Service, of counsel), for defendant.

RE, Chief Judge:

The question presented in this case pertains to the proper classification, for customs duty purposes, of certain merchandise imported from Sweden and described on the customs invoice as "remaining parts for dryer section" of a papermaking machine.

The merchandise entered at the port of Chicago in 1977, and was classified by the Customs Service as "[i]ndustrial machinery ... for the treatment of materials by a process involving a change of temperature, ... and parts thereof," under item 661.70 of the Tariff Schedules of the United States (TSUS), with duty at the rate of 6 per centum *ad valorem*. Plaintiff protests the classification, and contends that the imported merchandise should properly be classified as an "entirety" as "[m]achines for making cellulosic pulp, paper, or paperboard," under item 668.00, TSUS, with duty at the rate of 3.5 per centum *ad valorem*.

The pertinent statutory provisions of the tariff schedules are as follows:

<u>Classified Under:</u>
Schedule 6, Part 4, Subpart A:
  Industrial machinery, plant, and similar laboratory equipment, whether or not electrically heated, for the treatment of materials by a process involving a change of temperature, such as heating, cooking, roasting, distilling, rectifying, sterilizing, pasteurizing, steaming, drying, evaporating, vaporizing, condensing, or cooling; instantaneous or storage wa-

ter heaters, non-electrical; all the foregoing (except agricultural implements, sugar machinery, shoe machinery, and machinery or equipment for the heat-treatment of textile yarns, fabrics, or made-up textile articles) and parts thereof:

661.70   Other .......................... 6% ad val.

Claimed Under:
  Schedule 6, Part 4, Subpart D:
    Machines for making cellulosic pulp, paper, or paperboard; machines for processing or finishing pulp, paper, or paperboard, or making them up into articles:

668.00   Machines for making cellulosic
        pulp, paper, or paperboard .. 3.5% ad val.

The question presented is whether the imported merchandise has been properly classified by Customs as "[i]ndustrial machinery ... for the treatment of materials by a process involving a change of temperature, ... and parts thereof," under item 661.70, TSUS, or is properly classifiable as an "entirety" as "[m]achines for making cellulosic pulp, paper, or paperboard," under item 668.00, TSUS, as maintained by plaintiff.

In order to decide the question presented, the court must consider "whether the government's classification is correct, both independently and in comparison with the importer's alternative." *Jarvis Clark Co. v. United States*, 733 F.2d 873, 878, *reh'g denied*, 739 F.2d 628 (Fed.Cir.1984). Pursuant to 28 U.S.C. § 2639(a)(1) (1982), the government's classification is presumed to be correct, and the burden of proof is upon the party challenging the classification.

After an examination of the pertinent tariff provisions, relevant case law, and supporting papers, it is the determination of the court that the imported merchandise was properly classified by the Customs Service, as "[i]ndustrial machinery ... for the treatment of materials by a process involving a change of temperature, ... and parts thereof," under item 661.70, TSUS.

The parties have stipulated to the facts in this case. The imported merchandise, which entered at the port of Chicago in 1977, consists of parts of a papermaking machine known as the Owens–Illinois Tomahawk machine (O–I Tomahawk). The O–I Tomahawk "was purchased at a single multi-million dollar price pursuant to the terms of a contract for the purchase of an entire papermaking machine and auxiliary equipment." In approximately 16 other en-

tries in 1977 and 1978, at various ports, plaintiff imported other parts of the O–I Tomahawk. Together, the imported parts "constitute[ ] an almost complete papermaking machine." The various parts of the O–I Tomahawk "were imported in several entries because it is impossible to import an entire machine in a single shipment." Relying on their stipulation, the parties have submitted this action for decision in lieu of trial.

Plaintiff contends that the imported merchandise, together with all the other imported parts of the O–I Tomahawk, should be classified as an "entirety" as "[m]achines for making cellulosic pulp, paper, or paperboard," under item 661.70, TSUS, because "where Congress has provided a specific tariff classification for merchandise which due to its physical characteristics cannot be imported in a single shipment, the merchandise is nevertheless a single tariff entity and must be classified as such to effectuate the will of Congress." According to plaintiff, "[t]he size, complexity, cost, manufacturing and erection time of the machine rendered it physically impossible and economically unfeasible to import all the components in a single shipment."

Defendant contends that plaintiff raises the customs doctrine of "entireties" by asserting that the imported parts of the O–I Tomahawk, which were imported at various ports between 1977 and 1978, are classifiable together as "[m]achines for making cellulosic pulp, paper, or paperboard," under item 668.00, TSUS. According to defendant, plaintiff's argument "contravenes the well established principle that articles which are not imported together are precluded from being classified as an entirety." Defendant contends that a close reading of the TSUS "evidence[s] the [Congressional] intent that the imported components in this case be separately classified in the specific provision found correct by the Customs Service."

It is fundamental in customs cases that "the dutiable classification of articles imported must be ascertained by an examination of the imported article itself, in the

condition in which it is imported." *Worthington v. Robbins,* 139 U.S. 337, 341, 11 S.Ct. 581, 583, 35 L.Ed. 181 (1891) (Blatchford, J.). Similarly, in cases in which it is contended that imported articles constitute an "entirety," "[c]lassification is determined by the condition of the articles at the time of importation." *Miniature Fashions, Inc. v. United States,* 54 CCPA 11, 17, C.A.D. 894 (1966).

This court has described or defined the customs doctrine of "entireties" by stating that:

> "if there are imported *in one importation* separate entities, which by their nature are obviously intended to be used as a unit, or to be joined together by mere assembly, and in such use or joining the individual identities of the separate entities are subordinated to the identity of the combined entity, duty will be imposed upon the entity they represent."

*Karoware, Inc. v. United States,* 77 Cust.Ct. 112, 125, C.D. 4681, 427 F.Supp. 402, 411 (1976) (emphasis added) (quoting *Donalds Ltd. v. United States,* 32 Cust. Ct. 310, 315, C.D. 1619 (1954)), *aff'd,* 65 CCPA 1, C.A.D. 1197, 564 F.2d 77 (1977). Hence, in customs cases, "articles that may constitute an 'entirety' cannot be classified as an 'entirety' if they are imported in more than one importation." *Sears, Roebuck & Co. v. United States,* 13 CIT ——, 723 F.Supp. 805, 810 (1989) (citing *United States v. Baldt Anchor, Chain & Forge Div. of the Boston Metals Co.,* 59 CCPA 122, 126, C.A.D. 1051, 459 F.2d 1403, 1406–07 (1972); *Franklin Indus., Inc. v. United States,* 1 CIT 349, 350–51, 1981 WL 2457 (1981)).

In *Baldt Anchor,* the Court of Customs and Patent Appeals reversed a decision of the Customs Court that had held that the importation of five of the six machines necessary to make steel anchor chains for vessels was classifiable as an "entirety." The plaintiff, in *Baldt Anchor, Chain & Forge Div. of the Boston Metals Co. v. United States,* 64 Cust.Ct. 268, C.D. 3989 (1970), imported, in two importations, the machinery for the manufacture of steel anchor chains for vessels. The merchandise in the first importation consisted of a single machine, and was classified by Customs as "[a]rticles having as an essential feature an electrical element or device, . . ." under paragraph 353 of the Tariff Act of 1930, as modified by T.D. 52739. The merchandise in the second importation consisted of five machines, and was classified by Customs under various provisions of the Tariff Act of 1930.

Before the Customs Court, the plaintiff, in *Baldt Anchor,* protested the classification of the merchandise in the second importation, and contended that the merchandise should have been classified as an "entirety," as "[e]lectrical . . . welding . . . apparatus, . . . finished or unfinished, . . ." under paragraph 353 of the Tariff Act of 1930, as modified by T.D. 54108. The Customs Court concluded that:

> the language of paragraph 353 specifically provides for unfinished electrical welding apparatus and there is no question that the five machines imported in the second shipment come squarely within this provision as an entirety rather than under the parts provision of paragraph 353 or the *eo nomine* provisions for the individual components.

64 Cust.Ct. at 274. Hence, the Customs Court held that "the five machines imported in the second shipment constitute an entirety for tariff purposes, i.e., an unfinished electrical welding apparatus...." *Id.*

On appeal, the Court of Customs and Patent Appeals, reversed, and upheld Customs' classification of the merchandise in the second importation, under various provisions of the Tariff Act of 1930. The appellate court stated that:

> [t]o hold that the bulk of the equipment, imported in one shipment, is an entirety of unfinished apparatus and that the remaining element of that equipment, imported in a separate shipment, is a part of that entirety, *would greatly compromise the doctrine of entireties.* If that were the law, once it was determined that assembled pieces of equipment constitute an entirety, the mere absence of some of those pieces, even though essential ones, from the shipment would not

preclude its treatment as an entirety since almost always it would be an entirety of 'unfinished' apparatus and the missing pieces of equipment would be 'parts' of that entirety. Clearly that is not the law.

59 CCPA at 126, 459 F.2d at 1407 (emphasis added) (citing *United States v. Schoverling,* 146 U.S. 76, 81, 13 S.Ct. 24, 26, 36 L.Ed. 893 (1892) (Blatchford, J.); *Benrus Watch Co. v. United States,* 21 CCPA 139, 141–42, T.D. 46467 (1933), *cert. denied,* 291 U.S. 679, 54 S.Ct. 529, 78 L.Ed. 1067 (1934); *United States v. Irwin,* 78 F. 799, 802–03 (2d Cir.1897)).

In *James G. Wiley, A/C Pasadena Firearms Co. v. United States,* 56 Cust.Ct. 331, C.D. 2645 (1966), the imported merchandise consisted of barrels and frames for certain pistols. The merchandise, which together comprised complete pistols, entered in two importations. The importations arrived on the same day and were given consecutive entry numbers. The merchandise was classified by the Customs Service as "entireties," as "[p]istols and revolvers, ..." under paragraph 366 of the Tariff Act of 1930. Plaintiff protested the classification and contended that "due to their separate importations and their separate entries, the imported barrels and frames must be subject to separate appraisements and classifications and, therefore, cannot be treated as entireties." 56 Cust.Ct. at 333. The court overturned the classification of Customs which treated the importations as an "entirety," and sustained plaintiff's protest. The court held "that the barrels and frames, imported as they were aboard separate aircraft and made the subject of separate entries by the importer, are not dutiable, by virtue of the entireties doctrine, as complete pistols under paragraph 366." *Id.* at 337.

More recent cases show the uniform and consistent application of the doctrine. In *Franklin Indus., Inc. v. United States,* 1 CIT 349 (1981), the imported merchandise consisted of a boring mill that was imported in two importations. Customs classified the merchandise in both entries "as parts of machine tools" under item 674.53, TSUS. 1 CIT at 350. Plaintiff protested the classi-

fication of the merchandise in one importation, and contended "that the articles covered by this entry constitute an *entirety* owing to the difficulties encountered by plaintiff that necessitated separate shipment of parts of the mill...." *Id.* (emphasis in original). The court observed that it is "the long settled rule that entry of parts of an article will not permit classification of the entered parts as an *entirety...."* *Id.* (emphasis in original). Hence, the court upheld Customs' classification of the imported merchandise as parts of machine tools. *See also Sears, Roebuck & Co. v. United States,* 13 CIT ——, 723 F.Supp. 805, 809–811 (1989) (imported merchandise consisting of four of the six components of a stereo rack system cannot be classified as an "entirety"); *Trans–World Shipping Serv., Inc. v. United States,* 58 Cust.Ct. 120, 124, C.D. 2900 (1967) (separate importations of all parts of a coal loading machine "precludes classification of the coal loading machine as an entirety").

Despite the clarity of these precedents, plaintiff contends that "the rule of entireties does not impede classification of the imported components in item 668.00, TSUS[,]" since "[t]he court has not previously been asked to apply the entireties rule to merchandise which, because of physical and practical limitations, cannot be imported in a single shipment." Plaintiff asserts that "no reported decision addresses the entireties issue in the context peculiar to the classification of articles which [the parties have stipulated] ... cannot be shipped or imported as a unit." In essence, plaintiff's argument is that this is a case of first impression, and the doctrine of *stare decisis,* as represented by the settled law of "entireties," does not apply.

The doctrine of *stare decisis* "makes each judgment a statement of the law, or precedent, binding in future cases before the same court or another court owing obedience to its decisions." 1B J. Moore, J. Lucas, & T. Currier, *Moore's Federal Practice* ¶ 0.401 (2d ed. 1988). Justice Cardozo observed that *"[s]tare decisis* is at least the everyday working rule of our law." B. Cardozo, *Nature of the Judicial Process*

20 (1921). The doctrine has served the common law well, and facilitates attaining a variety of socially desirable goals. *See* Re, *Stare Decisis*, 79 F.R.D. 509, 514 (1979). In this case, it would seem clear that the doctrine of *stare decisis* is applicable, and that plaintiff has not demonstrated a sufficient reason why the court should not apply the well established principle of customs law that merchandise must be classified in its condition at the time of importation.

Judicial authority teaches that "[t]he doctrine of entireties in customs jurisprudence ... rests upon the proposition that the classification of imported articles for duty purposes is determined by their condition at the time of importation." *Donalds Ltd. v. United States*, 32 Cust.Ct. 310, 314, C.D. 1619 (1954). According to plaintiff, the rule that merchandise imported in more than one importation cannot be classified as an "entirety," is based on "administrative inconvenience, not a lack of administrative power or authority."

In the Supreme Court case of *United States v. Schoverling*, 146 U.S. 76, 13 S.Ct. 24, 36 L.Ed. 893 (1892), the imported merchandise consisted of gunstocks for breech-loading shotguns. The merchandise was classified by the Customs Service under a provision for completed breech-loading shotguns, since plaintiff "had imported the gunstocks in question, and had made an agreement with another firm by which the latter [was] to order the barrels, with the mutual expectation that the stocks and barrels, after arriving at New York, were to be put together so as to make complete guns...." 146 U.S. at 79, 13 S.Ct. at 25. Plaintiff protested the classification, contending that "the importation was simply one of gunstocks, without the gun-barrels required to make a complete fire-arm, and ... the [imported gunstocks] could not be regarded as completed guns...." *Id.*

Plaintiff's protest was denied by the Board of General Appraisers, and plaintiff appealed to the United States Court of Appeals for the Second Circuit.[1] According to the Supreme Court, the circuit court held for the plaintiff, since "there was nothing in the shipment in question except gun stocks mounted, articles which were properly described in the act only by [a provision for parts]...." *Id.* at 80, 13 S.Ct. at 26. In an opinion written by Justice Blatchford, who had authored several opinions in the area and was familiar with the various doctrines of customs law, the Supreme Court affirmed. The Supreme Court stated that "the intent of the importers to put the gunstocks with barrels separately imported, so as to make here completed guns for sale, cannot affect the rate of duty on the gunstocks as a separate importation." *Id.* at 81, 13 S.Ct. at 26.

Similarly, in *United States v. Irwin*, 78 F. 799 (2d Cir.1897), the imported merchandise consisted of unassembled gunstocks and barrels for certain guns, constituting all the parts of breech-loading shotguns. In *Irwin*, unlike in *Schoverling*, the gunstocks and barrels entered in a single importation. The court applied the rule of law stated in *Schoverling*, and held that the imported merchandise should be properly classified, as "entireties," under a provision for completed breech-loading shotguns. *See id.* at 801. In dicta, the *Irwin* court commented that

[w]hen the barrels and stocks are shipped upon different vessels, it may happen that they can never be assembled together again as a complete gun. The dangers of navigation and other contingencies may intervene to prevent it. It is not for the customs officers, in imposing duties, to sepculate [sic] upon these contingencies. They must take the arti-

---

1. At the time of the *Schoverling* case, an importer protested a decision of the collector of customs to the Board of General Appraisers. *See* Customs Administration Act of 1890, § 14, ch. 407, 26 Stat. 131, 137 (1890). Section 15 of the Act authorizes an appeal from a decision of the Board of General Appraisers "to the circuit court of the United States within the district in which the matter arises, for a review of the questions of law and fact involved in such decision." 26 Stat. at 138. *See also Washington Int'l Ins. Co. v. United States*, 12 CIT ——, 678 F.Supp. 902, 922 (Re, C.J., dissenting), *rev'd*, 863 F.2d 877 (Fed.Cir.1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 3157, 104 L.Ed.2d 1020 (1989).

cles as they find them to be upon examination.

*Id.* at 803. This language from *Irwin*, which reaffirms the traditional requirement that customs officials must classify the imported articles in their condition upon importation, has been quoted with approval in *Benrus Watch Co. v. United States*, 21 CCPA 139, 142, T.D. 46467 (1933), *cert. denied*, 291 U.S. 679, 54 S.Ct. 529, 78 L.Ed. 1067 (1934), and *James G. Wiley*, 56 Cust.Ct. at 335.

It cannot be denied that commercial norms in international trade have changed considerably since 1897. The advent of modern technology, communications systems and other advancements have decreased the risks inherent in the shipment of merchandise across the seas. Nonetheless, despite the many advancements in international trade in this century, this court is not willing to depart from the longstanding doctrine that merchandise must be classified according to its condition at the time of importation. Although the court may take judicial notice of the progress in international trade and transportation, this progress is also well known to the Congress and society at large. Hence, it is not for the court to ignore *stare decisis* and that which has been firmly established since 1891, that "[i]n order to produce uniformity in the imposition of duties, the dutiable classification of articles imported must be ascertained by an examination of the imported article itself, in the condition in which it is imported." *Worthington v. Robbins*, 139 U.S. 337, 341, 11 S.Ct. 581, 583, 35 L.Ed. 181 (1891) (Blatchford, J.). Plaintiff has presented no evidence that Congress, in enacting item 668.-00, TSUS, intended to abrogate or modify this fundamental doctrine, and permit merchandise, imported in more than one importation, to be classified as an "entirety." Surely, at this late date, it is not necessary to stress the constitutional and fundamental reasons that require uniformity in this important area of the law. *See* Re, *Litigation Before the International Trade*, 19 U.S.C.A. IX, XV (Supp.1989).

Plaintiff asserts that, in the present case, there is no administrative inconvenience in classifying the imported parts of the O–I Tomahawk as an "entirety," since here Customs "withh[e]ld[ ] appraisement of the individual shipments until the entire machine was imported...." Plaintiff, however, does not contest the appraisement of the imported merchandise, it contests its classification. Furthermore, in cases before this court, the classification of imported merchandise is independent from its appraisement. *See James G. Wiley*, 56 Cust.Ct. at 333–34 (A decision of the Customs Court holding that separately imported merchandise could not be appraised as an "entirety" "is plainly not controlling to the [classification] issue presently before us....").

In support of its assertion that, despite the basic requirements for the applicability of the doctrine of "entireties," the imported merchandise should be classified as "[m]achines for making cellulosic pulp, paper, or paperboard," under item 668.00, TSUS, plaintiff traces the history of the classification of papermaking machines by the Customs Service. According to an internal memorandum of 1976, it was the policy of Customs that parts of papermaking machines should be classified as "[p]arts of machines for making cellulosic pulp, paper or paperboard," under item 668.06, TSUS, unless, pursuant to General Interpretative Rule 10(ij), the parts were more specifically provided for by another tariff item. *See* Internal Advice No. CH–00048 (June 25, 1976). Plaintiff submits that, because papermaking machines are usually too large to be imported in one importation, Customs' policy "renders the provision for papermaking machines a nullity," and thus frustrates the intent of Congress.

Nevertheless, plaintiff does not cite or refer to any legislative history that shows that, in enacting item 668.00, TSUS, for "[m]achines for making cellulosic pulp, paper, or paperboard," Congress intended to abrogate or modify the longstanding judicial doctrine that merchandise must be classified according to its condition at the time of importation. Furthermore, as defendant points out in its brief, item 668.00 was not

rendered a "nullity" by the fact that paper-making machines are usually too large to be imported in one importation. Indeed, many importations were classified under item 668.00, TSUS. According to *U.S. Imports for Consumption and General Imports*, published by the United States Department of Commerce, Bureau of the Census, in 1977, there were 189 machines for making cellulosic pulp, paper, and paperboard classified under item 668.00, TSUS, and, in 1978, there were 264 machines that were classified under item 668.00, TSUS.

It is also important to note that there is a separate tariff item for parts of papermaking machines. Item 668.06, which was in effect at the time of importation, provides for "[p]arts of machines for making cellulosic pulp, paper or paperboard," with duty assessed at the rate of 3.5 per centum *ad valorem*. In its protest and its summons, plaintiff contended that the imported merchandise should be properly classified under this provision, as parts of papermaking machines. In its complaint before this court, however, plaintiff contended only "that the correct classification of the merchandise in issue is in item 668.00, TSUS...." It is equally important that, in all subsequent papers, plaintiff has based its claim and has relied solely on item 668.-00, TSUS.

While a claim under item 668.06, TSUS, is not before this court, it is nevertheless relevant to note that the imported merchandise in this entry, parts of the dryer section of a papermaking machine, are more specifically described as "[i]ndustrial machinery ... for the treatment of materials by a process involving a change of temperature, ... and parts thereof," under item 661.70, TSUS. *See* General Interpretative Rule 10(ij), TSUS ("a provision for 'parts' of an article covers a product solely or chiefly used as a part of such article, but does not prevail over a specific provision for such part.").

Plaintiff's final argument is "that Customs' present practice of classifying papermaking machine components imported in several entries as separate tariff entities contravenes our international obligations."

In support of its argument, plaintiff cites a 1978 treaty with Finland. The treaty noted "that the United States agreed to reduce to 3.5% ad valorem tariffs on imports of certain papermaking machinery provided for in the [TSUS]...." Agreement Supplementary to the General Agreement on Tariffs and Trade, July 21, 1978, United States–Finland, 30 U.S.T. 1952, 1953, T.I.A.S. No. 9305. Pursuant to the treaty and section 2111 of title 19 of the United States Code, Presidential Proclamation No. 4630 enacted item 661.67, TSUS, for "[m]achinery for making cellulosic pulp, paper, or paperboard, and parts thereof," with duty assessed at the rate of 3.5 per centum *ad valorem*. Proclamation No. 4630, 43 Fed. Reg. 59,049 (1978). Item 661.67, TSUS, was intended to "supersede" item 661.70, TSUS, under which the imported merchandise in this case was classified. *See* 43 Fed.Reg. at 59,052.

According to plaintiff, "[t]he goal of Presidential Proclamation 4630 was not realized because in the Tokyo Round of the GATT, due to negotiating limitations imposed by Section 101 of the Trade Act of 1974, ... rate reductions accorded to papermaking machine components were limited to the statutory maximum of 60%." Hence, despite the treaty and presidential proclamation, item 661.67, TSUS, for "[m]achinery for making cellulosic pulp, paper, or paperboard, and parts thereof," was given a higher tariff than item 668.00, TSUS, for "[m]achines for making cellulosic pulp, paper, or paperboard."

Plaintiff also maintains that a rule proposed by Customs, in 1982, in response to a petition "regarding the tariff classification of ... papermaking machines[,]" would have resolved the disparate tariff treatment for papermaking machines and parts of papermaking machines. Proposed Amendments to the Customs Regulations Relating to Importations of Certain Large Machines, 47 Fed.Reg. 18,621, 18,621 (1982). The proposed rule "would allow an importer to request in writing that certain machines, which because of their immense size and other factors are imported in separate shipments, be classified and dutiable as a complete machine under its particular

item number in the [TSUS]." *Id.* The rule was withdrawn, however, because of administrative inconvenience, "and more important[ly], [because] the overwhelming weight of legal and administrative precedent concerning the doctirne [sic] of entireties and the obligation to classify and assess duty on merchandise in its condition as imported, leads Customs to conclude that the proposal, if adopted, would have been of doubtful legality." Withdrawal of Proposed Customs Regulations Amendments Relating to Importations of Certain Large Machines, 48 Fed.Reg. 12,727, 12,728 (1983). Plaintiff asks this court to "make clear that [the judicial doctrine of 'entireties'] is not intended to frustrate Congressional intent and prevent classification as a single tariff entity merchandise which, although priced and sold as a unit, cannot be imported in a single shipment."

It is undisputed that the merchandise in this case entered in 1977. The classification of imported merchandise is, of course, governed by the TSUS as it existed at the time of importation. Hence, plaintiff's references to the 1978 treaty with Finland, the presidential proclamation, and the proposed Customs regulations, are factors that may be considered, but are not controlling. All the factors cited occurred after the importation of the merchandise, and cannot determine its classification.

It would seem clear that to make an exception to the doctrine that merchandise must be classified according to its condition at the time of importation would cause administrative inconvenience, and unnecessarily complicate the settled law of "entireties." Indeed, as the Court of Customs and Patent Appeals stated in *Baldt Anchor,* it "would greatly compromise the doctrine of entireties." 59 CCPA at 126, 459 F.2d at 1407.

Furthermore, the thorough briefs submitted by plaintiff indicate that the problems surrounding importations such as those in this case are well known to the executive and legislative branches of government. Under the analogous doctrine of "legislative acquiescence," the court is not prepared to abrogate a long-standing judicial precedent or doctrine which is well known to the legislature. *See Apex Hosiery Co. v. Leader,* 310 U.S. 469, 488, 60 S.Ct. 982, 989, 84 L.Ed. 1311 (1940) ("The long time failure of Congress to alter the Act after it had been judicially construed ... is persuasive of legislative recognition that the judicial construction is the correct one."). *See also United States v. Rutherford,* 442 U.S. 544, 554 n. 10, 99 S.Ct. 2470, 2476 n. 10, 61 L.Ed.2d 68 (1979). More specifically, this court has noted that if the doctrine that merchandise must be imported in a single entry to be classified as an "entirety" "is or becomes undesirable, the remedy lies with Congress." *James G. Wiley,* 56 Cust.Ct. at 337. Finally, some of the questions raised by plaintiff would appear to be matters for legislative judgment and are more properly addressed to the Congress.

## CONCLUSION

The customs classification of "[i]ndustrial machinery ... for the treatment of materials by a process involving a change of temperature, ... and parts thereof," under item 661.70, TSUS, is sustained, and plaintiff's claim that the imported merchandise was properly classifiable as "[m]achines for making cellulosic pulp, paper, or paperboard," under item 668.00, TSUS, is denied.

It is the holding of the court that plaintiff has failed to rebut the presumption of correctness that attaches to the classification of the merchandise by the Customs Service. Since the merchandise was properly classified as "[i]ndustrial machinery ... for the treatment of materials by a process involving a change of temperature, ... and parts thereof," under item 661.70, TSUS, plaintiff's action is dismissed.