**BROSTERHOUS, COLEMAN & CO.**
**A/C Lurgi Chemie Und**
**Hüttentechnik GmbH, Plaintiffs,**

v.

**UNITED STATES, Defendant.**

**Court No. 88–04–00308.**

United States Court of
International Trade.

May 11, 1990.

Ross & Hardies, Joseph S. Kaplan, New York City, for plaintiffs.

Stuart M. Gerson, Asst. Atty. Gen., Joseph I. Liebman, Atty. in Charge, Intern. Trade Field Office, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice, John J. Mahon, U.S. Customs Service, Steven Berke, for defendant.

DiCARLO, Judge:

Plaintiffs, Brosterhous, Coleman & Co., and Lurgi Chemie und Hüttentechnik GmbH, challenge the valuation and classification of components of a chlorine dioxide bleach plant imported for integration into a paper-making operation in the United States. The action is before the court on cross-motions for summary judgment. This court has jurisdiction under 28 U.S.C. § 1581(a) (1982).

The Court holds that the proper basis for calculating transaction value is the prices Lurgi agreed to pay its vendors for the components of the plant. The Court also holds that Customs properly declined to classify the components as an entirety. Accordingly, plaintiffs' motion for summary judgment is granted in part and denied in part. The government's cross-motion for summary judgment is denied in part and granted in part. The action is remanded to Customs for recalculation of transaction value consistent with this opinion.

## BACKGROUND

Crown Zellerbach Corp., a domestic producer of paper, contracted with plaintiff Lurgi, a West German corporation, requiring Lurgi to design, fabricate and supervise the construction of a chlorine dioxide bleach plant at Crown's paper-making facility in Camas, Washington. The contract gave precise technical specifications for the components, but did not specify the vendors who would supply the components or the countries from which they would be purchased. Lurgi contracted with vendors in the Federal Republic of Germany for the manufacture of the components and plaintiff Brosterhous, a licensed customshouse broker, imported them for Lurgi. The equipment was imported in 21 shipments which entered the United States between October 1982 and August 1984.

## DISCUSSION

On a motion for summary judgment, the court's function is to determine whether there are any factual disputes that are material to the resolution of the action. When ruling on cross-motions for summary judgment, if there are no genuine issues of material fact, the court must decide whether either party has demonstrated its entitlement to judgment as a matter of law.

## I. VALUATION

The parties agree that Customs correctly used transaction value as the basis for calculating duties. Transaction value is "the price actually paid or payable for the merchandise *when sold for exportation to the United States*" plus certain adjustments. 19 U.S.C. § 1401a(b) (1988) (emphasis added). A sale for exportation to the United States may occur even where the purchaser is outside the United States. *E.C. McAfee Co. v. United States*, 842 F.2d 314, 318 (Fed.Cir.1988) (citing *United States v. Getz & Co.*, 55 CCPA 11, 18, C.A.D. 927 (1967)). A determination as to which sale is for exportation to the United States is fact-specific and can only be made on a case-by-case basis. *E.C. McAfee*, 842 F.2d at 319. When there is more than one sale for exportation, Customs policy is that transaction value should be calculated according to the sale which most directly caused the merchandise to be exported to the United States. *See, e.g.*, C.S.D. 84–54, 18 Cust.Bull. 979 (Dec. 1, 1983); C.S.D. 83–95, 17 Cust. Bull. 930 (May 16, 1983); CLA–2 CO:R:CV:V 542928 BLS, TAA # 57 (Jan. 21, 1983).

Plaintiffs claim that Customs improperly calculated transaction value by using data derived from the sale between Lurgi and Crown rather than the sales between Lurgi and its suppliers. The government counters that the contract between Crown and Lurgi is the proper basis for calculating transaction value because it was the transaction most directly causing the exportation.

The contract between Crown and Lurgi did not require Lurgi to purchase the plant components from a particular vendor or country. It did not preclude Lurgi from purchasing the components from vendors in the United States. In affidavits, Lurgi and Crown personnel state that Lurgi was free to choose vendors in any country. *See* Plaintiff's Memorandum In Support of Its Motion For Summary Judgment, Exhibit A ¶ 7, Exhibit B ¶ 6. The government argues that, as a West German firm, Lurgi could be expected to purchase the components from vendors in its own country. Defendant's Opposition To Plaintiff's Motion For Summary Judgment And Cross–Motion For Summary Judgment In Its Favor, 12.

In addition, the government points to a provision in the contract stating:

The compensation indicated above ... is understood to be for delivery of equipment and the engineering package c.i.f. Camas, Washington, including adequate packing as necessary, unloading not included. Customs duties up to 3.5% applying customs tariff No. 661.67 covering pulp paper machinery is also included. All other taxes, fees or expenses payable in the U.S.A. shall be paid and borne by Buyer.

The Court believes this provision means that duties, if incurred, would be the responsibility of the seller up to 3.5% of the contract price. Any duties above that amount would be the responsibility of the buyer. This provision alone does not appear to require the merchandise to be imported. Rather, it stipulates the circumstances under which each party bears the responsibility of paying duties should the merchandise be imported.

To refute the affidavits, the government "must set forth specific facts showing that there is a genuine issue for trial." Rule 56(f) of the Rules of this Court. The contract provision is insufficient to meet that burden. Consequently, the Court finds that Lurgi could have purchased the components in the United States and was under no obligation to purchase components from any particular vendors or from vendors in any particular country. Here, it was not until Lurgi had decided which vendors would supply the components that any importation became necessary.

Under these facts, the Court finds that the transaction between Crown and Lurgi was not the sale for exportation that most directly caused the merchandise to be exported to the United States. The transactions between Lurgi and its vendors are, therefore, the sales for exportation for purposes of calculating transaction value under 19 U.S.C. § 1401a(b) (1988).

The determinations upon which the government relies to support its position that the contract between Crown and Lurgi is the sale which most directly caused the exportation are inapposite. In C.S.D. 84–54, a United States company entered into a contract to purchase shoes from an English company that, in turn, purchased the shoes from a manufacturer in El Salvador. The manufacturer in El Salvador was to ship the merchandise directly to the United States. C.S.D. 84–54, 18 Cust. Bull. at 979. In C.S.D. 83–95, a United States company ordered shirts from a supplier in Hong Kong who would deliver them to the buyer in Hong Kong. The distributor purchased the merchandise from a manufacturer in the People's Republic of China. C.S.D. 83–95, 17 Cust. Bull. at 931. *See also* CLA–2 CO:R:CV:V 542928 BLS, TAA # 57 (Jan. 21, 1983) (sale by Virgin Island distributor of cooking equipment manufactured in Asia to United States buyer).

In each instance, Customs determined that the sale for exportation was the transaction between the United States customer and the foreign distributor. *See* C.S.D. 84–54, 18 Cust. Bull. at 980; C.S.D. 83–95, 17 Cust. Bull. at 932; TAA # 57 at 3. In each case, however, the contract with the United States purchaser contemplated that the merchandise would be imported.

The reasoning of the Federal Circuit in *E.C. McAfee Co. v. United States,* 842 F.2d 314 (Fed.Cir.1988), appears to support the conclusion that the sale between Crown and Lurgi should not serve as the basis for calculating transaction value. *E.C. McAfee* concerned the valuation of made-to-measure clothing sold by distributors in Hong Kong to United States customers. The Hong Kong distributors supplied customer measurements and fabrics to tailors who

manufactured the clothing and delivered it to the distributor who packaged and shipped the finished product to the United States. *Id.* at 316.

The *E.C. McAfee* court found that transaction value should be based on the price the distributor paid the tailor because "the reality of the transaction between the distributors and the tailors is that the goods, at the time of the transaction between the distributors and tailors, are 'for exportation to the United States.'" *Id.* at 319. The court based its conclusion on the finding that from the time of the initial contact until eventual importation, the goods in question were being made for a specific United States consumer, not the United States market generally. *Id.* According to *E.C. McAfee,* this fact "compell[ed]" a reversal of the trial court's conclusion that the goods were not for exportation to the United States at the time of assembly. *Id.*

*E.C. McAfee* did not set out a bright-line test. The court stated that "[a] determination that goods are being sold or assembled for exportation to the United States is fact-specific and can only be made on a case-by-case basis." *Id.* The Court is aware that *E.C. McAfee* involved the interpretation of a regulation and somewhat different facts. Nevertheless, the Court finds the Federal Circuit's reasoning to be supportive. Furthermore, the facts in this case and *E.C. McAfee* are analogous. Lurgi carefully chose the components specifically for Crown. From the moment that an agreement was reached between Crown and Lurgi, Lurgi chose components for Crown rather than the United States market generally. As in *McAfee,* the components were "for exportation to the United States" at the time they were purchased by Lurgi from its vendors.

## II. CLASSIFICATION

■ Plaintiffs challenge the classification of the individual components under various provisions of the Tariff Schedule of the United States arguing that the merchandise is properly classified as an entirety under item 668.00, TSUS, which covers "[m]achines for making cellulosic pulp, paper, or paperboard...." Plaintiffs state

that the size of the subject merchandise made it impossible to transport in one shipment. Plaintiff's Memorandum In Support Of Its Motion For Summary Judgment, 4 (¶ 16). Plaintiffs argue that, where a single shipment is impossible, the doctrine of entireties should not be applied to preclude the classification of separately shipped merchandise as one item.

Plaintiffs submitted briefs prior to the court's decision in *KMW Johnson, Inc. v. United States*, 13 CIT ——, 728 F.Supp. 754 (1989). In *KMW Johnson*, the court rejected this argument with respect to components of the dryer section of a paper-making machine. *Id.* at ——, 728 F.Supp. at 754. As in this case, the question presented in *KMW Johnson* was whether the merchandise, which could not possibly be imported in one shipment, was properly classifiable under item 668.00, TSUS. After a thorough analysis of the history and policy surrounding the doctrine of entireties, the court found that "plaintiff has not demonstrated a sufficient reason why the court should not apply the well established principle of customs law that merchandise must be classified in its condition at the time of importation." *Id.* at ——, 728 F.Supp. at 758. The Court follows the *KMW Johnson* decision.

## CONCLUSION

The Court holds that for the purposes of valuation of the merchandise, the sales for exportation to the United States were the transactions between Lurgi and its vendors. Consequently, the prices Lurgi agreed to pay for the components of the plant are the proper basis for calculating transaction value under 19 U.S.C. § 1401a(b) (1988). The Court affirms Customs' classification of the merchandise as individual components rather than as an entirety. There being no material questions of fact and the Court having determined that the plaintiff is entitled to judgment as a matter of law on the valuation issue and that the government is entitled to judgment as a matter of law on the classification issue, the plaintiffs' motion for summary judgment is granted in part and denied in part and the defendant's cross-motion for summary judgment is denied in part and granted in part.

This action is remanded to the Customs Service for reliquidation in accordance with this opinion. Any excess duties paid, together with interest as provided by law, is to be refunded to the plaintiffs.