# United States Court of Appeals for the Federal Circuit

---

**DELL PRODUCTS LP,**
*Plaintiff-Appellant,*

v.

**UNITED STATES,**
*Defendant-Appellee.*

---

2010-1451

---

Appeal from the United States Court of International Trade in Case No. 06-CV-0306, Senior Judge Richard W. Goldberg.

---

Decided: April 29, 2011

---

MICHAEL E. ROLL, Pisani & Roll, LLP, of Los Angeles, California, argued for plaintiff-appellant. With him on the brief were BRETT IAN HARRIS and ROBERT J. PISANI.

AMY M. RUBIN, Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington. DC, argued for defendant-appellee. With her on the brief were TONY WEST, Assistant Attorney General, JEANNE E. DAVIDSON, Director; and BARBARA S. WILLIAMS, Attorney in Charge, Interna-

tional Trade Field Office, Civil Division, United States Department of Justice, of New York, New York. Of counsel on the brief was BETH C. BROTMAN, Office of Assistant Chief Counsel, International Trade Litigation, United States Customs and Border Protection, of New York, New York.

---

Before BRYSON, DYK, and PROST, *Circuit Judges.*

BRYSON, *Circuit Judge.*

This case requires us to interpret the phrase "goods put up in sets for retail sale" as used in General Rule of Interpretation 3(b) of the Harmonized Tariff Schedule of the United States. The Court of International Trade upheld a ruling of U.S. Customs and Border Protection that spare laptop batteries that were offered for sale individually but were packaged with laptop computers for shipment were not "put up in sets for retail sale" with those computers. We affirm.

I

Dell Products LP manufactures and sells secondary batteries for use with laptop computers. A secondary battery provides an additional power source that allows extended operation of the computer without access to an external power supply. Two batteries cannot be used at the same time; once the primary battery dies, it is removed and replaced with a secondary battery.

The secondary batteries at issue in this case were admitted separately from the laptop computers into Dell's Foreign Trade Sub-Zone ("FTZ") in Nashville, Tennessee. At the time of their admission to Dell's FTZ, the secon-

dary batteries had "non-privileged foreign status," meaning that they had not been cleared by Customs and would be appraised for tariff purposes at the time of their formal entry into the United States.[1]

Laptop computers were offered for sale by Dell together with a primary battery, a power cord and adapter, and operational manuals. Secondary batteries were offered for sale separately along with other optional accessories. If a particular customer chose to purchase a secondary battery at the time of purchasing a laptop computer, Dell would package all of the items for that customer together and would then ship the package from the FTZ to the buyer. A small box containing the laptop computer and the primary battery would be placed into a larger box containing the operational manuals and the computer's cord and adapter. If the customer chose to purchase a secondary battery or any other optional accessories, those items would also be placed in the larger box for shipping to the customer.

Dell proposed to classify secondary batteries that were packaged with laptop computers as duty-free "portable digital automatic data processing ["ADP"] machines," the ordinary classification for laptop computers. Harmonized Tariff Schedule of the United States ("HTSUS") subheading 8471.30.00, codified at 19 U.S.C. § 1202. Customs disagreed and classified the secondary batteries

---

[1]     An FTZ is an area that is geographically within the United States but is considered outside of the United States for customs purposes. *See BMW Mfg. Corp. v. United States*, 241 F.3d 1357, 1358 n.1 (Fed. Cir. 2001). Within an FTZ, non-privileged foreign merchandise can be manipulated or manufactured into another item with a different tariff classification before entry into the United States. 19 U.S.C. § 81c(a).

as "other storage batteries," HTSUS subheading 8507.80.80. Under that subheading, the secondary batteries were assigned a duty rate of 3.4 percent. Customs explained its classification decision in a formal ruling letter. U.S. Customs Serv., HRL 967364 (Dec. 23, 2004). It determined that the secondary batteries were not "put up in sets for retail sale" with the laptop computers under General Rule of Interpretation 3(b) ("GRI 3(b)") and that the secondary batteries therefore should be classified separately from the laptop computers.

Dell appealed the Customs ruling to the Court of International Trade, arguing that the secondary batteries were "put up in sets for retail sale" with the laptop computers, or in the alternative, that the secondary batteries were "functional units" of the laptop computers and should be classified as ADP machines. The court agreed with Customs that the secondary batteries should not be classified as ADP machines. The court interpreted GRI 3(b) to require distinct articles to be "offered together for retail sale or displayed or shown together for retail sale" before they could be classified together for tariff purposes. The batteries at issue in this case, the court found, "are not offered or displayed *together* for retail sale with the computer—the computer is offered together with a power cord and primary battery, and the secondary batteries are offered individually." The court concluded that the batteries are "simply one of many optional, complementary items that may be purchased at the same time as a notebook computer" and therefore are not "'put up together' with other components of the retail set, as the terms are used for tariff purposes."

The trial court further found that a customer "could purchase one or more secondary batteries, along with other supplemental items, when simultaneously purchas-

ing a notebook computer." Dell would then "package the additional optional items into a shipping box that already contained the notebook computer, a primary battery, and a power cord." Under those circumstances, the court explained, even though the secondary batteries were packaged together with the notebook computers for transport to customers, the collection of items that included the secondary batteries was "never put up by Dell as [a] set[] prior to a potential retail sale." To interpret such a collection of items as a "set" for tariff purposes, the court noted, would be contrary to the language of GRI 3(b), "which anticipates a set as a defined unit that is offered for sale to retail customers." Because the secondary batteries had been offered for sale separately from the laptop computers, the court explained, "a consumer's customized order of individual, complementary items . . . is not transformed into a GRI 3(b) 'retail set' upon entry merely by virtue of being ordered at the same time and subsequently packaged together in an FTZ." In this case, the court concluded, "the contents of a customized order are determined by an individual customer; Dell did not designate which merchandise constituted a set for retail sale."

The trial court also rejected Dell's argument that its secondary batteries were functional units of laptop computers under GRI 1. In this appeal, Dell challenges only the trial court's GRI 3(b) determination.

## II

The General Rules of Interpretation govern the interpretation of HTSUS classifications. GRI 3 controls tariff classification when goods can be classified under two or more separate subheadings of the HTSUS. GRI 3(b) states:

> Mixtures, composite goods consisting of different materials or made up of different components, and goods put up in sets for retail sale . . . shall be classified as if they consisted of the material or component which gives them their essential character, insofar as this criterion is applicable.

This court has not previously interpreted the phrase "goods put up in sets for retail sale," nor had the Court of International Trade done so prior to the decision in this case. Dell contends that the phrase "encompass[es] goods that are 'packaged' in a certain manner . . . at the time those goods are entered into the commerce of the United States." The government agrees with the trial court that GRI 3(b) sets are goods that are offered, displayed or shown together for retail sale.

Each party cites to competing dictionary definitions of the term "put up," which is used in the phrase "goods put up in sets for retail sale." In that context, however, the most relevant definition is that of the phrase "for retail sale." The term "for sale" is defined as "offered to be sold; made available to purchasers," Random House Webster's Unabridged Dictionary 1693 (2d ed. 1987), and is characterized as referring to "the status of being purchasable," Webster's Third New International Dictionary 2003 (1968). Thus, the phrase "goods put up in sets for retail sale" most naturally refers to goods that are offered to customers as a set for purchase rather than to a collection of goods that are assembled into a set after the customer has purchased them. Although under the Uniform Commercial Code a sale does not occur until "the passing of title from the seller to the buyer for a price," UCC § 2-106, which may not occur until delivery, UCC § 2-401, there is no indication that "put up" for sale means packaged for delivery to the customer.

Dell argues that Customs cannot consider the manner in which its products were offered for sale because the only point in time relevant to tariff classification is the time of entry into the United States. In support of that argument, Dell relies on *United States v. Citroen*, 223 U.S. 407 (1911). That case concerned a set of pearls that were purchased in France and then imported into the United States. The buyer had viewed the pearls both loose and strung on a necklace, but the pearls entered the United States in loose form for delivery to her. Once delivered, the pearls were combined with others and strung on a necklace. Tariff provisions in effect at the time provided for different duty rates for "pearls set or strung" and "pearls in their natural state." 223 U.S. at 413. The Supreme Court concluded that the pearls at issue were classifiable under the latter provision because "'the dutiable classification of articles must be ascertained by an examination of the imported article itself, in the condition in which it is imported.'" *Id.* at 414-15, quoting *Worthington v. Robbins*, 139 U.S. 337, 341 (1891).

*Citroen* is not pertinent here, because it did not address the classification of distinct articles. In fact, the Court in *Citroen* explicitly distinguished the case in which "parts of a described article" are "separately packed to avoid the specified duty on the article as a whole." 223 U.S. at 416. In reference to that scenario, the Court cited *United States v. Irwin*, 78 F. 799 (2d Cir. 1897), a case in which shotgun stocks and barrels were packaged and invoiced separately at the point of importation. The *Irwin* court classified the stocks and barrels collectively as "shotguns" because "the fact that [the parts] are packed in separate cases cannot affect their dutiable character." 78 F. at 803. By distinguishing *Irwin*, the Court in *Citroen* made clear that its holding did not foreclose inquiry into the manner of sale or intended use of goods when the

question is whether distinct articles should be classified together or separately.

Dell points out that this court continues to cite *Citroen* for the proposition that goods should be classified in their condition as imported. *E.g.*, *Mita Copystar Am. v. United States*, 21 F.3d 1079, 1082 (Fed. Cir. 1994). While that principle is not controversial as a general matter, neither that proposition in general nor *Citroen* in particular has been regarded as dispositive as to whether different articles should receive the same classification. *See Samsung Elecs. Co. v. United States*, 873 F.2d 1427, 1429 (Fed. Cir. 1989).

Determining whether distinct articles are "goods put up in sets for retail sale" necessarily involves an inquiry into a point in time before those goods are purchased, irrespective of the time of entry of the goods into the United States. In many instances, goods are offered for sale before they enter the United States for customs purposes, meaning that Customs must inquire into the manner in which the goods were presented for purchase to customers. That was the case here. Customs could not determine whether secondary batteries and laptop computers that were packaged together had been "put up in sets for retail sale" simply by examining their condition at the time of importation. Thus, GRI 3(b) necessarily limits the application of the *Citroen* principle in such cases. *Cf. Int'l Bus. Mach. Corp. v. United States*, 152 F.3d 1332, 1336 (Fed. Cir. 1998) (noting that *Citroen* does not govern the analysis under GRI 10(h)).

Dell contends that its reason for packaging the goods together should be irrelevant to the tariff classification for those goods. It argues that goods packaged together for shipment should be treated in the same way as goods

packaged together for sale, as long as those goods are packaged together upon entry into the United States (i.e., in this case, upon departure from the FTZ). Dell's position, however, is contrary to the text of GRI 3(b), which uses the term "retail sale" and not "shipment." A set of goods that is packaged "for retail sale" is a set of goods that is offered for sale to customers as a single unit of merchandise. It is not a collection of goods that happen to be packaged together to be transported to the customer, regardless of whether they had any prior connection.

The General Rules of Interpretation allow for two collections of goods that are identical in type and physical configuration upon entry into the United States to be classified differently because of the manner in which they were offered for sale. If distinct articles are put up in sets for retail sale, GRI 3(b) provides that those articles are classified collectively according to the material or component that gives them their essential character. If the same articles are not put up in sets for retail sale, GRI 1 provides that each article will be classified separately "according to the terms of the [HTSUS] headings and any relevant section or chapter notes," unless another GRI provision applies. There is therefore nothing anomalous about the classification of a particular article depending on the manner in which the manufacturer or importer has combined or associated that article with other related articles that are imported with it.

Dell cites Explanatory Note (X) to GRI 3(b) in support of its position that goods that are packaged together at the time of importation must be regarded as "put up in sets for retail sale." Dell's argument on that point is entirely unconvincing, however.

The Explanatory Notes to the General Rules of Interpretation are not legally binding but provide guidance in

interpreting the GRIs. *Home Depot U.S.A., Inc. v. United States*, 491 F.3d 1334, 1336 n.\* (Fed. Cir. 2007). Explanatory Note (X) sets out a three-part test to determine whether goods constitute a GRI 3(b) set, all three parts of which must be satisfied in order for the goods to constitute a set. The last part of the test requires that goods be "put up in a manner suitable for sale directly to users without repacking (e.g., in boxes or cases or on boards)." Based on that language, Dell contends that its secondary batteries qualify as part of a "set" because they are included in the shipping box that is sent from the FTZ to the customer. However, those examples of packages of goods that are offered for retail sale do not cast doubt on the proposition that set determinations for purposes of GRI 3(b) turn on the seller's arrangement of goods prior to their purchase, not on the seller's arrangement of goods for shipment to a buyer after the purchase is made. Dell also points to other HTSUS provisions that use the phrase "put up" in conjunction with packaging, as opposed to retail sale. Like the various dictionary definitions of "put up," those other HTSUS provisions shed no light on the meaning of GRI 3(b) because, in those provisions, the words "put up" are not followed by the words "in sets for retail sale."

The consistency of Customs' interpretation of GRI 3(b) enhances the persuasive power of that interpretation. As the Supreme Court recently noted in *Kasten v. Saint-Gobain Performance Plastics Corp.*, No. 09-834 (U.S. Mar. 22, 2011), the views of an agency with congressionally delegated enforcement powers as to the meaning of statutory terms are entitled to a degree of weight, even if they are not entitled to the full degree of deference accorded to formal notice and comment regulations under *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). The Court in *Kasten* explained that

the length of time an agency has held particular views as to the meaning of a statute "suggests that they reflect careful consideration, not 'post hoc rationalizatio[n].'. . . And they consequently add force to our conclusion." *Kasten*, slip op. 13; *see also United States v. Mead Corp.*, 533 U.S. 218, 235 (2001).

Customs has been consistent in its application of GRI 3(b) to ADP machines and their auxiliary devices. Prior to the ruling in this case, Customs refused to classify external speakers used with desktop computers as "goods put up in sets for retail sale" together with those computers, because the speakers were not "put up" with the computers before the buyer purchased the goods. Instead, each grouping was made as a result of a customized purchase by a customer. U.S. Customs Serv., HRL 964209 (Sept. 14, 2001). In the present case, Customs determined that secondary batteries were not "goods put up in sets for retail sale" with laptop computers because they were not offered for sale with those computers as a single unit of merchandise. On the other hand, Customs concluded in a subsequent ruling that external speakers that were packaged together with desktop computers "[p]rior to importation and prior to sale" were classifiable as GRI 3(b) sets upon importation. U.S. Customs Serv., NYRL 044257 (Dec. 2, 2008).[2] Because the trial court's

---

[2]    Dell points out that a 2004 Customs publication entitled *Classification of Sets under HTSUS* addresses the classification of sets but makes no mention of the importance of the manner in which goods are offered for sale. The publication, however, does not purport to be a comprehensive treatment of the issue of set classification, and it does not contain any discussion of GRI 3(b)'s requirement that goods be "put up in sets for retail sale." The publication is therefore irrelevant to the issue in this case.

interpretation of GRI 3(b) follows those rulings of Customs and comports with the language of the Rule, we uphold its judgment classifying Dell's secondary batteries as "other storage batteries."

## **AFFIRMED**