*1373 DYK, Circuit Judge,
dissenting.
This appeal requires us to determine whether the phrase “footwear of the slip-on type, that is held to the foot without the use of laces or buckles or other fasteners,” in subheading 6404.19.35 of the Harmonized Tariff Schedule of the United States (“HTSUS”), covers boots that rise above the ankle and that must be pulled on using the hands. The majority interprets the subheading as covering any footwear “that is held to the foot without the use of laces or buckles or other fasteners.” I respectfully disagree. If Congress had meant for this subheading to cover all such footwear, it could simply have written “footwear that is held to the foot without the use of laces or buckles or other fasteners,” and omitted the words “of the slip-on type.” It did not do so, suggesting that the subheading is more limited, and in particular that the words “of the slip-on type” are limiting.[1]
In interpreting tariff provisions, we look to the common and commercial meaning of the terms involved. “[Tjariff acts are generally to be construed according to the commercial understanding of the terms employed,” Swan v. Arthur, 103 U.S. 597, 598, 26 L.Ed. 525 (1881), so that “[ajbsent legislative intent to the contrary, we construe HTSUS terms according to their common and commercial meanings, which are presumed to be the same,” Franklin v. United States, 289 F.3d 753, 757 (Fed.Cir.2002). The term “footwear of the slip-on type” has a common and commercial meaning that excludes boots of the type involved here. In order to qualify as “footwear of the slip-on type,” under the common and commercial definition, an item of footwear must satisfy three limitations: it must be a shoe (that is, not a high-cut boot); it must be easy to slip on; and it must have few or no fasteners.
Both specialized and general-purpose dictionaries support this definition of “footwear of the slip-on type.” Two industry references define a “slip-on” as, respectively, “[a]ny shoe without fastenings,” and “[a]ny shoe into which the wearer merely slips the foot, held without benefit of lacing, bucklesf] or other fastening.” See The. Complete Footwear Dictionary 167 (William A. Rossi ed., 2d ed. 2000) (emphasis added); The Dictionary of Shoe Industry Terminology (Ruth J. Schachter ed., 1986) (emphasis added). One general-purpose dictionary defines “slip-on” as an adjective meaning “easily put on or taken off, as shoes without laces,” or as a noun describing “a slip-on shoe or garment.” Webster’s New World Dictionary of the American Language 1340 (2d. college ed. 1984) (emphasis added). Another general-purpose dictionary defines “slip-on” as an adjective applied “esp[eeially to] shoes or clothes,” and meaning “having no (or few) fasteners and therefore able to be put on and taken off quickly”; the same dictionary also defines “slip-on” as a noun describing “a shoe or garment that can be easily slipped on and off.” The New Oxford American Dictionary 1597 (2d ed. 2005) (emphasis added). A third general-purpose dictionary defines “slip-on” either as “a glove or shoe without fastenings,” or simply as “an article of clothing that is easily slipped on or off.” Webster’s Third New International Dictionary of the English Language Unabridged 2144 (2002) (emphasis added).
*1374 Furthermore, the term “shoe,” in its common and commercial definition, excludes high-cut boots. One specialized dictionary defines “shoe” as including “chiefly low-cut footwear versus high-tops or boots,” while two general-purpose dictionaries define “shoe” as, respectively, a “covering for the foot ... not reaching above the ankle,” and a “durable covering for the human foot, especially] one ... reaching about to the ankle.” The Complete Footwear Dictionary, supra, at 155 (emphasis added); The New Oxford American Dictionary, supra, at 1566 (emphasis added); The American Heritage Dictionary 1132 (2d college ed. 1982). A third general-purpose dictionary defines “shoe” more broadly, as “an outer covering for the human foot usu[ally] made of leather,” but two of its exemplary sub-definitions are limited to low-cut footwear (“an outer foot covering reaching to the ankle or thereabouts,” and “a low-cut outer foot covering-compare boot, oxford ”). Webster’s Third New International Dictionary, supra, at 2099 (emphasis added).
The government does not contest that these dictionary definitions set forth the term’s common and commercial meaning. Rather, the government emphasizes the fact that several of the “shoe” definitions acknowledge that the term sometimes designates an above-the-ankle boot. It is apparent from the definitions in the record, however, that this usage of “shoe” is uncommon or disfavored.
Having adopted this common and commercial definition of “footwear of the slip-on type,” it is clear that the boots at issue in this appeal do not fall within subheading 6404.19.35. The government has conceded that the boots are, indeed, “boots”; that they rise above the ankle; and that “[t]o don the boots, a wearer must grip the top of the woven textile upper with two hands ... and pull the boot up forcefully while adjusting the foot until the foot and calf are securely ensconced.” See Deckers Outdoor Corp. v. United States, 844 F.Supp.2d 1324, 1326 (Ct.Int’l Trade 2012) (emphasis added); United States Br. 2-3. The boots therefore fail two of the three criteria for being “footwear of the slip-on type”: they are not shoes, and they are not easy to slip on.
This interpretation of the statutory language does not violate the rule against surplusage because it renders the phrase “that is held to the foot without the use of laces or buckles or other fasteners” surplus. In fact, these words are not surplus, but rather serve to exclude shoes that are easily slipped on but that have “few,” as opposed to “no,” fasteners. See The New Oxford American Dictionary supra, at 1597 (defining “slip-on” as “having no (or few) fasteners and therefore able to be put on and taken off quickly” (emphasis added)). Nor, contrary to the majority, does this reading of the statutory term “footwear of the slip-on type, that is held to the foot without the use of laces or buckles or other fasteners” render surplus the separate clause of the same subheading that covers “[flootwear with open toes or open heels.” While some open-heel footwear may fall within the statutory term at issue, other such footwear may have straps or other fasteners holding the foot in place. Indeed, the government’s own set of “Footwear Definitions,” which both the government and the majority cite as authoritative in this case, defines “open heeled shoes” as including any shoes in which “all or part of the back of the wearer’s heel can be seen”—a definition that clearly allows for shoes with a rear strap or fastener. See Footwear Definitions, T.D. 93-88, 27 Cust. B. & Dec. No. 46, at *15 (Oct. 25,1993).
Finally, the majority urges that we should defer to the definition of “slip-on” *1375 found in the government’s collection of “Footwear Definitions.” According to this document, “[a] ‘slip-on’ includes ... [a] boot which must be pulled on.” See id. at *24. Presumably, this definition would include cowboy boots, which can be exceptionally difficult to place on the foot. As the majority concedes, however, the definitions included in this document are not formal “Customs rulings.” See id. at *1. As such, these definitions are entitled only to Skidmore deference, notwithstanding the length of time to which the agency has adhered to them. See Kasten v. Saint-Gobain Performance Plastics Corp., 563 U.S. -, -, 131 S.Ct. 1325, 1335-36, 179 L.Ed.2d 379 (2011) (citing Skidmore v. Swift & Co., 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124 (1944) and United States v. Mead Corp., 533 U.S. 218, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001)); see also Dell Prods. LP v. United States, 642 F.3d 1055, 1060 (Fed.Cir.2011) (citing Mead). Under Skidmore deference, such agency pronouncements are “eligible to claim respect according to [their] persuasiveness.” See Mead, 533 U.S. at 221, 121 S.Ct. 2164; see also Skidmore, 323 U.S. at 140, 65 S.Ct. 161 (“The weight [given to an agency’s non-definitive pronouncement] will depend upon the thoroughness evident in [the agency’s] consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control.”). The document does not provide any reasoning for its definitions, but simply asserts by fiat that “boot[s] which must be pulled on” are “slip-on[s].” See Footwear Definitions, T.D. 93-88, 27 Cust. B. & Dec. No. 46, at *24. For the reasons discussed above, the government’s interpretation of subheading 6404.19.35 is unpersuasive.
In sum, the common and commercial meaning of the term “footwear of the slip-on type, that is held to the foot without the use of laces or buckles or other fasteners” excludes boots that rise above the ankle and that are not easy to slip on, such as the boots at issue in this appeal. I respectfully dissent.